Inez MARTIN, et al., Plaintiffs,

Henri Mae King, Plaintiff-Appellant,

v.

Margaret HECKLER, et al., Defendants-Appellees.

No. 83–3058.

United States Court of Appeals, Eleventh Circuit.

Oct. 15, 1985.

R.A. Culbertson and Barry C. Laboda, Orlando, Fla., for plaintiffs/plaintiff-appellant.

Gwenda J. Kelley, Baltimore, Md., Claire D. Dryfuss, Dept. of Health and Rehabilitation Services, Tallahassee, Fla., and Robert W. Genzman, Asst. U.S. Atty., Orlando, Fla., for defendants-appellees.

Before GODBOLD, Chief Judge, and RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, HATCHETT, ANDERSON and CLARK, Circuit Judges.

RONEY, Circuit Judge:

This appeal presents the question of whether plaintiffs are entitled to attorney's fees against federal and state defendants pursuant to the Civil Rights Attorney's Fees Awards Act, 42 U.S.C.A. § 1988 and

the Equal Access to Justice Act (EAJA), 28 U.S.C.A. § 2412.

The district court, without passing upon whether the statutes would otherwise authorize attorney's fees, refused to make such an award on the alternative grounds that the plaintiffs were not prevailing parties, special circumstances existed which would have made an award unjust, and co-counsel waived his right to fees. A panel of this Court decided that the plaintiffs were prevailing parties, but that special circumstances foreclosed an attorney's fee award. *Martin v. Heckler*, 733 F.2d 1499 (11th Cir.1984). We granted rehearing *en banc* principally to consider whether there were special circumstances permitting denial of a fee award. Deciding that point contrary to the district court and the panel decision, we make the following four holdings, vacate the judgment, and remand the case to the district court for further consideration: *first*, the plaintiffs were prevailing parties within the meaning of the two attorney's fees statutes; *second*, there were no special circumstances which would preclude the award of fees under either statute for legal services up to the time of the preliminary hearing in the district court; *third*, co-counsel for plaintiffs did not waive his right to attorney's fees by his agreement to represent plaintiffs without fees; and *fourth*, as to the federal defendant, the Equal Access to Justice Act does not authorize a fee award under section 2412(b) unless the federal defendant is sued to enforce one of the specific statutory sections referred to in 42 U.S.C.A. § 1988, and fees may not be awarded for analogous actions.

We borrow copiously from Judge Dyer's panel opinion for a statement of the case and the decision that the plaintiffs were prevailing parties. On July 29, 1981, the Florida Department of Health and Rehabilitative Services (HRS) changed its Aid to Families with Dependent Children (AFDC) manual to prohibit aid payments to the natural, non-legal father and his relatives unless paternity had been established by judicial process. This change was prompted by a Federal Action Transmittal issued by the United States Department of Health and Human Services (HHS) on May 5, 1981. After an administrative hearing, by order of September 17, 1981, a plaintiff in this suit was denied AFDC benefits because of the change in the Florida Manual.

On November 13, 1981 an action was brought on behalf of a class of applicants and recipients of AFDC who are related to dependent children and the dependent children whose AFDC benefits had been denied or terminated solely on the ground that paternity had not been established in a state court action.

On November 16, 1981, plaintiffs moved for a preliminary injunction. On December 3, 1981, the district court deferred ruling on the motion based upon representations by counsel for the state agency that it would rescind the new policy and reinstate all applicants and recipients who had been affected by the new policy with retroactive payment for all lost benefits. Counsel for HHS verified that this action would not result in any loss of federal funding under the AFDC program. On January 18, 1982, HRS and HHS filed answers in which the state defendant alleged that upon being assured by HHS that Florida could return to its pre-July 1981 policy regarding relatives of the putative father without suffering diminution in federal financial participation, it had, on December 18, 1981, reinstated all AFDC benefits retroactively. On a suggestion of lack of jurisdiction by reason of mootness, objected to by plaintiffs, the district court dismissed the action as moot.

Subsequently, plaintiffs moved for an award of attorney's fees under the Civil Rights Attorney's Fees Awards Act, 42 U.S.C.A. § 1988, and the Equal Access to Justice Act, 28 U.S.C.A. § 2412. The district court denied the motion for the reasons above stated. This appeal followed.

## I. *Prevailing Parties*

■ The threshold question that must be addressed is whether plaintiffs are prevailing parties where, as here, the statutory claims are mooted by defendants' remedial action subsequent to the lawsuit. There is nothing in the record to show that either

the state or federal defendants had done anything toward reinstating benefits or giving them retroactive effect until after suit was filed. On the contrary, on the occasions when the plaintiffs contacted the state agency, they were told that the state could not withdraw the challenged policy because of the Federal Action Transmittal. This position was reaffirmed by a hearing officer of the state agency. An employee of HHS confirmed that the policy change by the state was necessary. We have searched the record in vain to find anything that would show that the plaintiffs' action was not necessary to bring about a change in the policy.

In these circumstances we have no doubt that plaintiffs are prevailing parties:

Nothing in the language of § 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated. Moreover, the Senate Report expressly stated that "for purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief." S.Rep. No. 94–1011, p. 5 (1976); [1976 U.S.Code Cong. & Ad.News 5908, 5912.]

*Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980). "For example, a party may be considered to be 'prevailing' if the litigation successfully terminates by a consent decree, an out-of-court settlement, a voluntary cessation of the unlawful practice by the defendant, or other mooting of the case where the plaintiff has vindicated his right." *Doe v. Busbee,* 684 F.2d 1375, 1379 (11th Cir.1982). This is true even where the remedial action moots the lawsuit before trial and the plaintiff voluntarily dismisses the suit. *Fields v. City of Tarpon Springs,* 721 F.2d 318, 321 (11th Cir.1983).

The prevailing party test is "whether he or she has received substantially the relief requested or has been successful on the central issue," *Watkins v. Mobile Housing Board,* 632 F.2d 565, 567 (5th Cir.

Unit B 1980), or, stated another way, whether "plaintiffs' lawsuit was a catalyst motivating defendants to provide the primary relief sought in a manner desired by litigation." *Robinson v. Kimbrough,* 652 F.2d 458, 465 (5th Cir.1981).

We are unimpressed with the argument that plaintiffs' victory does not represent the vindication of plaintiffs' civil rights because the litigation was unnecessary. The record simply does not bear this out. Plaintiffs "prevailed" within the context of section 1988 as to both the state and federal defendants. We therefore disagree with the district court's finding that plaintiffs were not prevailing parties.

## II. *Special Circumstances*

Although neither 42 U.S.C.A. § 1988 nor 28 U.S.C.A. § 2412(b) specifically so provides, it is accepted jurisprudence that federal statutes which permit an award of attorney's fees to prevailing parties in selected litigation are subject to a special circumstances provision. Attorney's fees may be denied where "special circumstances would render such an award unjust." *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983) (citing *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968) (per curiam)); *Dowdell v. City of Apopka,* 698 F.2d 1181, 1189 (11th Cir.1983); *Riddell v. National Democratic Party,* 624 F.2d 539, 543–44 (5th Cir.1980); S.Rep. No. 94–1011, 94th Cong., 2d Sess. 5, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5908, 5912.

The district courts retain a measure of discretion in applying the special circumstances exception, a doctrine founded in equitable concepts. Although no rigid rules have been developed to guide the decision as to when this exception should result in the denial of fees to a prevailing party, some principles have developed or are unquestioned, creating a framework within which such decisions should be made.

Because the statutes here involved do not expressly state the "special circum-

stances" exception, the judicially imposed provision should be narrowly construed so as not to interfere with the congressional purpose in passing such statutes. A principal purpose of such statutes is to encourage civil rights enforcement by plaintiffs acting as "private attorneys general." *See, e.g., New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 63, 100 S.Ct. 2024, 2030, 64 L.Ed.2d 723 (1980); *Dowdell*, 698 F.2d at 1189. Where the defendants are both state and federal governments and both defendants oppose plaintiffs' suit, "the plaintiffs are not merely 'private attorneys general', they are the only attorneys general." *Smith v. Puett*, 506 F.Supp. 134, 146 (M.D.Tenn.1980) (substantially identical AFDC policy change struck down and fees awarded under section 1988 against state defendants).

■ Defendants bear the burden of proving the existence of special circumstances, *see Williams v. Miller*, 620 F.2d 199, 202 (8th Cir.1980); *Mid-Hudson Legal Services, Inc. v. G & U, Inc.*, 578 F.2d 34, 38 (2d Cir.1978), and must make a "strong showing" to justify denial of section 1988 fees to prevailing plaintiffs. *Riddell v. National Democratic Party*, 624 F.2d at 543.

■ Although the special circumstances determination is reviewed under the abuse of discretion standard, *Johnson v. State of Mississippi*, 606 F.2d 635, 637 (5th Cir. 1979), such decisions are reviewable and appellate courts have had no trouble reversing a denial of fees on the ground that the perceived special circumstances did not, in fact, exist in a given case. *Robinson*, 652 F.2d at 465; *Riddell*, 624 F.2d at 545–46.

■ The fact that defendants' actions were not taken in bad faith or their defenses were not intended to cause delay is insufficient to deny fees to prevailing parties. Defendants' good faith, lack of culpability, or prompt remedial action do not warrant a denial of fees under the special circumstances preclusion. *See Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. at

402 n. 4, 88 S.Ct. at 966 n. 4, 19 L.Ed.2d 1263 (no new statutory provision would have been necessary had Congress only intended to penalize defendants who acted in bad faith, since even the American rule allows attorney's fees in such circumstances); *see also Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (1978).

■ The general concept that governmental defendants will accede to complaints that show clear error in the statutes and regulations under which they operate is not sufficient to bar a fee award, if in fact the litigation was the catalyst necessary to bring about governmental action at the time. *See Fields v. City of Tarpon Springs*, 721 F.2d 318 (11th Cir.1983). It is also not a special circumstance sufficient to preclude a fee award against the state defendant that the state merely acted pursuant to federal regulation. *See Supreme Court of Virginia v. Consumers Union of the United States, Inc.*, 446 U.S. 719, 739, 100 S.Ct. 1967, 1978, 64 L.Ed.2d 641 (1980) (suggesting in dicta that fees can be awarded against those merely enforcing regulations they had no role in promulgating); *Crosby v. Bowling*, 683 F.2d 1068, 1072–75 (7th Cir.1982) (under facts very similar to those here, no special circumstances existed where state acquiesced to or was "coerced by" federal defendants into adopting challenged AFDC provisions); *Tongol v. Usery*, 601 F.2d 1091, 1097 (9th Cir.1979) (where state defendant played limited role in enforcing a federal regulation, a section 1983 claim had been stated so that, on remand, the district court had discretion to award fees).

A primary congressional purpose in enacting section 1988 was to encourage worthwhile litigation that is necessary to protect civil rights. The primary inquiry is whether the plaintiffs' actions were those Congress intended to encourage in passing section 1988. Where parties prevail in vindicating important rights, but receive little or no financial benefit as a result of that litigation, it was considered unfair for

those parties to bear their own attorney's fees.

In litigation of this kind, it often appears that time would eventually cure the problem. Therefore, sometimes the litigation will simply achieve at an earlier date a result that would eventually occur without the litigation. To a welfare recipient, caught in the daily problem of acquiring the cash flow needed to meet the expenses for which the welfare is intended, time is an important ingredient to any claim. Therefore, it is not a special circumstance making an award of attorney's fees unjust to assert simply that the defendants, in their own good time, would eventually have gotten around to curing the problem and to making retroactive payments when they should have been made earlier. The exact benefit that is bestowed in such a case might be relevant in determining the appropriate amount of fees, but it would not justify denial of all fees.

▇▇▇ Viewed in the perspective of these principles, the defendants have presented no special circumstances which would make an award of fees unjust in this case. The district court thought that actions short of litigation would have brought about the same result. This might have eventually been true. But as discussed in the prevailing party section of this opinion, the record fails to show that plaintiffs' action was not necessary to bring about the change in policy at the time that policy was changed. The record reflects ample opportunity for the state and federal agencies to have corrected the problem without litigation. It was not until after the suit was filed that this was accomplished. There is nothing to show that the agencies, without this litigation, would not have delayed the decision for several months. Although the district court found that the state and federal defendants made all possible prompt and good faith efforts to resolve the misunderstanding, the fact is that they seemed unable to accomplish this until the suit was filed, and made no effort whatsoever to communicate the resolution of the error until after the plaintiffs' attorney had al-

ready prepared for and appeared at the hearing for a preliminary injunction. These circumstances are not "special" under the statute's meaning. It would simply be unjust not to award a fee for the plaintiffs' attorneys up to that point. *See Riddell*, 624 F.2d at 545 (defendants' good faith beliefs that challenged statute was valid and that enforcement of statute was in compliance with official duty not special circumstances); *Criterion Club of Albany v. Board of Commissioners*, 594 F.2d 118, 120 (5th Cir.1979) (no special circumstances where defendants never admitted liability, defendants took remedial action in response to the lawsuit, and the case did not proceed far before becoming moot); *Coalition for Basic Human Needs v. King*, 691 F.2d 597, 602 (1st Cir.1982) (no special circumstances where state law required defendants' conduct under threat of criminal prosecution).

It is moreover clear that the circumstances in this case are dissimilar to those this Court has indicated might constitute special circumstances. *See Riddell*, 624 F.2d at 544–45 ((1) where plaintiffs' action asserts essentially a private tort claim for money damages, (2) where the plaintiffs were not instrumental in achieving the remedy, (3) where plaintiffs challenged an antiquated, rarely enforced, statute, and (4) where plaintiffs had compromised their right to pursue subsequent fees).

The record refutes the conclusion that the defendants took all possible steps to avoid the litigation, as found by the district court. The litigation was the catalyst necessary to achieve the action at the time. Even after suit was filed, legal work for plaintiffs could have been curtailed by prompt notice prior to the court appearance at the preliminary hearing. There are no special circumstances which render unjust an attorney's fees award against either the state or federal defendant. The decision of the district court to deny fees on that ground is reversed.

### III. *Waiver*

The district court held that co-counsel for plaintiffs waived his right to a fee because

of a clause in a "Designation and Consent to Act" form which he signed. The form was submitted to the district court in compliance with Rule 2.02(a)(1) of the United States District Court, Middle District of Florida, which allows for Special Admission to Practice in particular cases. It stated: "Said co-counsel agrees to appear and act without fee or charge with the undersigned [co-counsel] ... for the purpose of prosecuting the above-styled cause."

Plaintiffs' co-counsel, a legal services corporation attorney, signed that form apparently to assure the district court that he agreed to act as co-counsel without looking to payment of a fee by plaintiffs or a fee-splitting arrangement. There is no indication that co-counsel for plaintiff intended to waive the right to the fees that could be recovered from the defendants under the applicable statutes.

■■■■ An award of attorney's fees to a successful plaintiff is not contingent upon an obligation to pay an attorney and is not affected by the fact that no fee was charged. *See Cornella v. Schweiker*, 728 F.2d 978, 986 (8th Cir.1984) (involving attorney's fees under EAJA); *Mid-Hudson Legal Services, Inc. v. G & U, Inc.*, 578 F.2d 34 (2d Cir.1978) (involving attorney's fees under the Civil Rights Attorney's Fees Awards Act); *Sellers v. Wollman*, 510 F.2d 119, 123 (5th Cir.1975) (involving attorney's fees under the Truth-in-Lending Act). Admission to practice before the district court could not have been conditioned on relinquishment of a claim for fees. *Cf. Mitchell v. Johnston*, 701 F.2d 337, 351 (5th Cir.1983) (error to condition *pro hac vice* admission of attorneys on fee relinquishment "simply because the district court felt their assistance was unnecessary"). Plaintiffs' co-counsel did not waive his right to an attorney's fee award under section 1988 by signing a Designation and Consent to Act form.

IV. *Attorney's Fees Under Section 2412(b) Against the Federal Defendant Acting Absent State Action*

The liability of the *federal* defendant for attorney's fees for this litigation turns on the proper construction of 28 U.S.C.A. § 2412 when read in relation to 42 U.S.C.A. §§ 1983 and 1988. Two subsections of section 2412 relate to attorney's fees.

Under section 2412(d), a court may award attorney's fees to a prevailing plaintiff in a civil action against the United States, unless the position of the United States "was substantially justified or ... special circumstances make an award unjust." To recover under that section, however, an application must be submitted to the court within 30 days of final judgment. That was not done here and, in any event, the United States itself is not a named party. Plaintiffs' claim to attorney's fees against the federal defendant is not based on section 2412(d), but instead on section 2412(b).

Under section 2412(b), in a civil action brought against the United States or any United States agency or official acting in an official capacity, the United States shall be liable for attorney's fees "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." Plaintiffs argue that section 2412(b)'s words "any other party" subject the federal defendant acting under color of federal law to the same liability a state acting under color of state law would be subject to under 42 U.S.C.A. § 1988, which specifically provides fees for 42 U.S.C.A. § 1983 prevailing parties.

Section 1988 provides that in an action to enforce "sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as a part of the costs."

A suit against the federal defendant acting solely under color of *federal law* could not have been brought pursuant to any of the statutes enumerated in section 1988. Plaintiffs argue, however, that this suit is analogous to a section 1983 suit. Section

1983 creates a cause of action against a defendant who deprives a person of federal rights when acting "under color of any" state law. The issue is whether section 2412(b) makes a federal defendant liable for fees in a suit analogous to one listed in section 1988, or only in a suit under a specifically listed statute. In other words, is the federal defendant which violated those rights enumerated in section 1983 acting under color of *federal law,* with no state action, liable for attorney's fees under section 2412(b), or is it liable only if it acted at least in part under color of state law?

At the time this Court took this case *en banc,* there was a split among the circuits on this issue. The Eighth Circuit had allowed fees against the federal government where there was no claim of state action, *Premachandra v. Mitts,* 727 F.2d 717 (8th Cir.1984), while the Seventh and Ninth Circuits had denied them. *Lauritzen v. Lehman,* 736 F.2d 550 (9th Cir.1984); *Saxner v. Benson,* 727 F.2d 669 (7th Cir.1984), *cert. granted sub nom. Cleavinger v. Saxner,* — U.S. —, 105 S.Ct. 1166, 84 L.Ed.2d 318 (1985) (petition for certiorari filed did not focus on section 2412(b) question). Since then, however, the conflict has been eliminated by the *en banc* decision of the Eighth Circuit ruling contrary to the vacated panel decision which had granted fees. *Premachandra v. Mitts,* 753 F.2d 635 (8th Cir.1985) (*en banc*). Most recently, the D.C. Circuit also joined the position taken by the other circuits. *Unification Church v. Immigration & Naturalization Service,* 762 F.2d 1077, 1079–81 (D.C.Cir.1985); *but see Boudin v. Thomas,* 732 F.2d 1107, 1114 (2d Cir.1984) (dictum indicating it would hold the United States liable for fees); *Trujillo v. Heckler,* 587 F.Supp. 928, 931–32 (D.Colo.1984). This brought the Eighth and D.C. Circuits in line with the decisions of the Seventh and Ninth Circuits denying fee awards when there is no state action component. No circuit has yet held for plaintiffs under these circumstances.

This Court initially found persuasive the reasoning of the Eighth Circuit panel and the Ninth Circuit dissent. *See also* H.R.

Rep. No. 96–1418, 96th Cong., 2d Sess. 17, *reprinted in* 1980 U.S.Code Cong. & Ad. News 4984, 4996 (EAJA section-by-section analysis). But to take that position now would renew a conflict among the circuits that no longer exists.

■ Certainty and consistency in the law are important to those who seek to govern themselves according to the law. In a case involving the construction of a statute which lends itself to varying interpretations, the law is well served by a court's attempt to achieve uniformity of decision, provided that attempt does not sacrifice integrity or compromise fundamental principles. Harmony among circuits should be a goal and not a fortuitous coincidence. When conflicts arise in matters of this kind, either Congress or the United States Supreme Court must resolve them, if all citizens are to receive even treatment under the same law. Until that happens, litigants in different circuits are treated differently under the same statutes. To the extent that circuits can maintain uniformity with principled decisions, there is desirable predictability of the law and equal application throughout the country. *See Thomas v. Florida Power & Light Co.,* 764 F.2d 768, 770–71 (11th Cir.1985).

This is such a case. The section 2412(b) issue involves statutory interpretation. Fairness does not require one interpretation over the other. Nor is the matter so important to the administration of justice that one circuit is justified in insisting on its own way. To the extent judicial construction has missed the congressionally-intended mark, Congress can readily amend the statute's language to clarify its intent. In the meantime, prevailing plaintiffs in the Eleventh Circuit will be treated the same as those in the other circuits.

■■ Therefore, we hold that attorney's fees under section 2412(b) cannot be awarded against a federal defendant pursuant to 42 U.S.C.A. § 1988, except in actions to enforce against the defendant a provision of the statutes specifically listed in section 1988. Thus, in this case, attorney's

fees cannot be awarded against the federal defendant under a section 1983 theory, absent some state action.

## V. *Other Arguments*

The plaintiffs argue that even if section 2412(b) precludes an award against the federal defendant if it acted only under color of federal law, in this case the federal officials acted jointly with the state officials to provide the necessary state action on the part of the federal officials. For this theory, the plaintiffs rely on *Knights of the Ku Klux Klan v. East Baton Rouge Parish School Board*, 735 F.2d 895, 900 (5th Cir.1984), which held that federal officials' joint action with the parish school board provided the requisite state action on the part of the federal as well as state officials so that both were liable for the conspiracy under section 1983 and in turn for attorney's fees under sections 1988 and 2412(b). Other cases have held that federal officials acting in their official capacities normally act under color of federal law, not state law, and are thus not subject to section 1983 liability. *Hubbert v. United States Parole Commission*, 585 F.2d 857, 858 (7th Cir.1978); *Mack v. Alexander*, 575 F.2d 488, 489 (5th Cir.1978); *cf. Hampton v. Hanrahan*, 600 F.2d 600, 623 (7th Cir. 1979) (holding state officials provided requisite state action to make entire conspiracy involving federal and state officials actionable under section 1983), *rev'd in part on other grounds*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980); *Kletschka v. Driver*, 411 F.2d 436, 448–49 (2d Cir.1969).

The district court did not address these arguments. Neither did the district court address the argument by the state defendants that they did not act under color of state law, as required for liability under section 1983, but rather acted under color of federal law. The state defendants thus claim their liability did not arise out of any statute listed under section 1988, the applicable attorney's fees section.

■ ■ A state agency's violations of the Social Security Act in administering an AFDC benefits program may give rise to section 1983 liability and support a section 1988 award of attorney's fees. *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); *Crosby v. Bowling*, 683 F.2d 1068, 1072–75 (7th Cir.1982) (coercive power of federal government which resulted in state implementation of challenged AFDC policy insufficient to vitiate state defendants' "blame" under section 1988, and it was not an abuse of discretion to refuse to limit state defendants' fee liability to the extent of its "blame"). The requirement of federal approval does not foreclose a finding that the state agency acted under color of state law. *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 398–400, 399 n. 13, 99 S.Ct. 1171, 1175–77, 1176 n. 13, 59 L.Ed.2d 401 (1979); *see also Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). Other cases, however, have found no state action where federal involvement in the actions leading to violation of the plaintiff's rights was so pervasive that the actions were held to be taken under color of federal and not state law. *Ellis v. Blum*, 643 F.2d 68, 83 n. 17 (2d Cir.1981) (state employees who issued pretermination notices to Social Security disability recipients in accordance with federal procedures prescribed by the Secretary held to be acting "under color of federal law" where funding entirely of federal origin and state agencies functioned solely as Secretary's agents); *Askew v. Bloemker*, 548 F.2d 673, 677–78 (7th Cir.1976) (presence of a few state officers who served as backup for a raid planned and executed by federal officials provided insufficient state action to support a section 1983 claim).

The disposition of the case by the district court and the panel made it unnecessary for either to decide these issues. The district court noted that "[t]he issue of whether State or Federal action was the basis for this suit need not be addressed here since this denial of attorney fees rests on other

grounds." The panel, likewise, noted that it did not need to decide the issue:

> Our disposition of the case makes it unnecessary for us to consider or decide whether plaintiffs could prevail against either the state or federal defendants under the provisions of 28 U.S.C. § 2412(b) and its interplay with 42 U.S.C. § 1988 and 42 U.S.C. § 1983....

*Martin v. Heckler,* 733 F.2d at 1502 n. 1.

■ These issues must be addressed before an award of fees may be made against either the state or the federal defendants. Although it is a matter of great discretion, it is common for appellate courts to refrain from ruling on issues not previously decided by the trial court. *See Familias Unidas v. Briscoe,* 619 F.2d 391, 406 (5th Cir. 1980); *Armstrong v. Collier,* 536 F.2d 72, 77 (5th Cir.1976); *see generally* 9 C. Wright & A. Miller, Federal Practice and Procedure § 2577 (1971); 5A J. Moore & J. Lucas, Moore's Federal Practice ¶ 52.06[2] (2d ed. 1985). It is especially inefficient for the *en banc* court to rule on matters not ruled upon by the district court or a panel of the court, and an *en banc* court should not rule on issues which do not clearly merit consideration under Fed.R.App.P. 35. This is particularly true where the record appears to be insufficient and further facts may need to be developed for a proper determination of the issues.

Therefore, we vacate the judgment of the district court and remand the case for further proceedings consistent with this opinion.

VACATED and REMANDED.

CLARK, Circuit Judge, concurring in part and dissenting in part, joined by HATCHETT, Circuit Judge:

I concur in Judge Roney's excellent opinion except as to Part IV. That part relieves the United States Department of Health and Human Services (HHS) (and the federal government, generally) from payment of attorney fees when, acting under color of federal law absent state action, it has deprived a citizen of a federal statutory or constitutional right. In the event state action is present, the State of Florida is liable for attorney fees under 42 U.S.C. § 1988. It would be particularly anomalous if Florida must pay attorney fees for the federal agency's mistake, while the federal government is relieved of liability.

The federal government is liable pursuant to 28 U.S.C. § 2412(b):

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency and any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses *to the same extent that any other party would be liable* under the common law or *under the terms of any statute which specifically provides for such an award.*

(emphasis added).

It is necessary to look to congressional history to determine what was intended by the language "to the same extent that any other party would be liable ... under the terms of any statute which specifically provides for such an award." In the majority opinion we hold that if on remand state action is found to be present, the State of Florida is liable for attorney fees under 42 U.S.C. § 1988 for its breach of 42 U.S.C. § 1983. The state and the federal governments deprived plaintiffs of privileges to which they were entitled under the laws of the United States. Section 1988 provides that attorney fees may be awarded in an action to enforce the provisions of § 1983.

As the majority opinion relates, several circuits have spoken on this subject. The best statement of the congressional history and how it makes clear the intention of Congress in passing § 2412(b) is found in Senior Judge Floyd R. Gibson's opinion in *Premachandra v. Mitts:*

> A close evaluation of the legislative history and purpose of § 2412(b) convinc-

es us that Congress, in making the United States liable for attorneys' fees "to the same extent as any other party would be liable . . . under the terms of any statute providing for such fees," intended to authorize fee awards in suits, like the one here, where federal government officials have violated plaintiff's fundamental constitutional rights, since state officials would be liable for fees under § 1988 for analogous violations of plaintiff's constitutional rights.

First, as stated in the relevant Report of the House Committee on the Judiciary (H.R.Rep. No. 1418 at 5–6, 9, 10; 1980 U.S.Code Cong. & Ad.News 4984, 4987) the EAJA was intended to ensure that individuals and small businesses "would not be deterred from seeking review of, or defending against unreasonable governmental action because of the expense involved in securing the vindication of their rights". *See also Berman v. Schweiker,* 713 F.2d 1290, 1295–96 (7th Cir.1983). Pursuant to that purpose, § 2412(b) was designed "[to establish] a general statutory exception for an award of fees against the Government" and "[to place] the federal government and civil litigants [both private parties and states] on a completely equal footing" with respect to attorneys' fees. House Report at 8, 9; 1980 U.S.Code Cong. & Ad.News at 4987. These objectives could be best served by making the United States liable for fees in suits against federal officials for vindication of constitutional right, "to the same extent that" states (the "other party") are liable for fees in analogous § 1983 suits involving state officials.

Second, the legislative history reveals that Senate Bill 265, which was to become the EAJA, was specifically amended to assure the United States would be liable for attorneys' fees in suits of the type involved here. Senate Bill 265, as originally proposed in 1979, provided in § 2412(b) that the United States shall be liable to the same extent as "a private party" (rather than any other party) would be liable. *See Award of Attor-*

*neys' Fees Against The Federal Government: Hearing on S.B. 265 Before the Subcommittee on Courts, Civil Liberties, and the Administration of Justice of the House Judiciary Committee,* 96th Cong.2d Sess. at 1, 3, 9 (setting forth S.B. 265 as of August 1979). However, after hearings on S.B. 265 before the House Subcommittee on Courts, Civil Liberties and the Administration of Justice, the subcommittee changed the language of § 2412(b) so that the final version made the United States liable to the same extent as "any other party", rather than "a private party", would be liable. *See* H.R.Rep. No. 96–1418 at 1, 4, 7; 1980 U.S.Code Cong. & Ad.News 4985–86. Obviously, the subcommittee was persuaded by the testimony of Armend [sic] Derfner of the Lawyer's Committee for Civil Rights Under Law. *Id.* at 7; 1980 U.S.Code Cong. & Ad.News 4985–86. Mr. Derfner told the subcommittee:

Mr. Kastenmeier, if I could just direct myself to one portion of this bill?

There is an area in which a slight drafting modification could carry out what I believe might be the intention of the committee; and that is to put the United States completely on a par as far as the enforcement of important constitutional and statutory rights.

In the Civil Rights Act of 1976 you provided that when someone, whether it be an individual or business, or whatever, sues a State or local government under 42 United States Code, section 1983, to vindicate a constitutional or Federal statutory right, that fees would be available under the *Newman v. Peggy [Piggie] [sic] Park* standard. These bills say that the United States should pay fees—in the amendment to 28 United States Code 2412—in those circumstances where the court may award such fees in suits involving private parties.

That doesn't say State or local government, but if the language were amended to read, "in those circumstances where the court may award

such fees in suits involving other litigants"; it would achieve that purpose. And I think it would go even further toward putting the United States on a par with other governmental bodies. Hearings on S.B. 265 at 100.

The import of Mr. Derfner's remarks seems pretty clear: by extending the United States' liability for attorneys' fees to that of "any other party", Congress would make the federal government liable for attorneys' fees in suits seeking to vindicate federal constitutional rights, just as states are liable under § 1988 for fees in analogous suits against state officials brought under § 1983. In accordance with Mr. Derfner's suggestion, the subcommittee amended S.B. 265 to read "any other party" in the immediately succeeding draft, which became the final. version of the EAJA. H.R.Rep. No. 96–1418 at 1, 4, 7. We believe this sequence of events demonstrates Congress' intent to extend § 2412(b) to make the United States liable for fees in suits, like the instant one, where federal officials engage in activity that, if carried on by a state official, would render a state liable for attorneys' fees under 42 U.S.C. § 1988.

Finally, the drafters of the bill were well aware of the potential applicability of § 2412(b) to § 1988. House Report No. 96–1418 provides that the Act "reflects a strong movement … toward placing the federal government and civil litigants on a completely equal footing" and that "[2412(b) ] clarifies the liability of the United States under such statutes as the Civil Rights Attorneys' Fees Awards Act of 1976 [42 U.S.C. § 1988]." H.R.Rep. No. 1418 at 9, 17; 1980 U.S. Code Cong. & Ad.News at 4987, 4996. 727 F.2d 717, 727–29 (8th Cir.1984) (footnote omitted), *vacated,* 753 F.2d 635 (8th Cir.1985) (en banc) (Gibson, J., dissenting).

The basis for the majority opinion's conclusion that a federal defendant acting under color of federal law with no state action is not liable for fees under § 2412(b) is that uniformity of the law will be served by our concurring in the views of other circuits. The majority therefore acquiesces in several other circuits' reasoning that where "a suit against the federal defendant acting solely under color of *federal law* could not have been brought pursuant to any of the statutes enumerated in Section 1988," (Maj. op., at 1152), it is not liable for attorney fees under § 2412(b) absent state action.

While harmony among the circuits is desirable, it should not be achieved at the expense of ignoring clear Congressional intent when passing legislation.

Moreover, the effect of § 2412(b) was to codify and make applicable to the United States the "bad faith" and common law benefit exceptions to the American Rule on Attorney's Fees as well as the statutory allowances of attorney fees in various sections of the federal.law. *See* H.R.Rep. No. 1418 at 9, 17 (1980). Attorney fees are not limited to law suits where the prevailing party could have invoked a common law exception to recover fees against some party other than the United States. The United States' liability for attorney's fees in civil actions is subject to the same common law standards applicable to any other party.

It seems only reasonable to interpret the statutory fee shifting exception in a similar manner. Like the "common law" provision, the statutory provision should be.read to place the United States on an equal footing with any "other party." Thus, the federal government should be liable for fees in suits involving constitutional violations by federal officials, acting under federal law, because a state would be liable for fees under § 1988 if state officials, acting under color of state law, committed a similar constitutional violation.

Admittedly, the statutory language is not crystal clear. However, the lack of precision in the statute should not be used to frustrate the purpose that becomes clear upon an examination of the legislative history. Nor should the desirable end of uniformity among the circuits cause us to ignore Congressional intent. Because I believe the legislative history makes the in-

tent of the Congress manifest, I respectfully dissent from that section of the majority opinion holding that the federal government is not subject to attorney fee liability when a federal agency has deprived a citizen of a constitutional right.