**626**

Willie L. JONES, Plaintiff,

v.

UNITED STATES DRUG ENFORCE-
MENT ADMINISTRATION et al.,
Defendants.

Civ. A. No. 3:91–0520.

United States District Court,
M.D. Tennessee,
Nashville Division.

Oct. 14, 1993.

E.E. (Bo) Edwards, III, Edwards & Sim-
mons, Nashville, TN, for plaintiff.

Michael L. Roden, Office of the U.S. Atty., Nashville, TN, for defendants.

## MEMORANDUM

WISEMAN, District Judge.

This case is now before the court on plaintiff's application for attorneys' fees. Because Mr. Jones is a prevailing party on a claim substantially related to his civil rights claims, and because the DEA collaborated with police officers who were acting under the color of state law when Mr. Jones' civil rights were violated, the court concludes that an award of fees pursuant to 42 U.S.C. § 1988 is in order.

### I

The facts of this case have twice been set out before and thus will not be belabored here. *See Jones v. U.S. Drug Enforcement Admin.*, 801 F.Supp. 15 (M.D.Tenn.1992) (*Jones I*); *Jones v. U.S. Drug Enforcement Admin.*, 819 F.Supp. 698 (M.D.Tenn.1993) (*Jones II*). Most pertinent to this proceeding is the ultimate conclusion reached as to the merits of the case: the government failed to meet its burden of proving probable cause for the institution of forfeiture proceedings and so Mr. Jones' funds were to be returned to him. *See Jones II*, 819 F.Supp. at 724. As a result of this ruling, Mr. Jones now seeks attorney fees in the sum of $117,595 under either the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, or the Equal Access to Justice Act, 28 U.S.C. § 2412. If the court sees fit to award fees, the government requests additional time to respond to the specific amount of fees requested by plaintiff.

### II

*A. Fees Under § 1988*

■ Section 1988 of Title 42 of the U.S.Code provides that:

[i]n any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C.A. § 1988(b) (West Supp.1993). To be a "prevailing party" within the meaning of this statute, a party need not necessarily win on the civil rights claim. Rather, "[i]f the plaintiff has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit,' the plaintiff has crossed the threshold to a fee award of some kind." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791–92, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989). To cross this threshold, "at a minimum, . . . the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Id.* at 792, 109 S.Ct. at 1493.

Mr. Jones filed, as part of his complaint against the DEA and its affiliated officers, a claim under 42 U.S.C. § 1983 alleging that his currency had been seized and forfeited in violation of his Fourth, Fifth, and Fourteenth Amendment rights. Therefore, Mr. Jones initiated an action specifically enumerated within § 1988 as a compensable action, and thus he may be entitled to reasonable attorneys' fees under § 1988 if he proves he prevailed on significant issue that achieved some of the benefits contemplated by filing this § 1983 claim, and if he proves this victory altered the legal relationship between himself and the defendants.

■ Mr. Jones has amply proven his case. Clearly Mr. Jones prevailed on significant issues related to his § 1983 claims. The court, in both *Jones I* and *Jones II*, repeatedly made statements to the effect that the Drug Interdiction unit officers, and the DEA as approver of these officers' actions, had violated Mr. Jones' constitutional rights. Most notably in *Jones II*, the court explicitly declared that "officers of the Drug Interdiction Unit (DIU) seized [Mr. Jones'] currency in violation of his Fourth Amendment rights. . . ." *Jones II*, 819 F.Supp. at 700. Moreover, the court found that Mr. Jones' was frisked in violation of the Fourth Amendment and that Mr. Jones' was seized in violation of the Fourth Amendment when Mr. Jones was asked to accompany the offi-

cers to the DIU office. *See id.* at 717–19. Each of these findings was crucial to the final determination that the government lacked probable cause for its forfeiture suit against Mr. Jones. *Id.* at 723. Thus in *Jones II* alone, Mr. Jones' constitutional claims under § 1983 were addressed, resolved in his favor, and were important to the ultimate resolution. Most importantly, Mr. Jones achieved at least some, if not all, of the benefits he hoped to achieve by filing his § 1983 claim when he was refunded his currency.[1]

■ The ordered return of wrongfully forfeited funds clearly satisfies the "alteration of legal relationship" requirement. The government lost funds; Mr. Jones regained his funds. The change in relationship could not be clearer. Contrary to the government's contention, a substantive change in relationship between the parties occurred due to the court's § 1983–related rulings. Mr. Jones received more than just a declaratory judgment that his Fourth Amendment rights had been violated. Mr. Jones received $9,000 that had been illegally seized.

With regard to *Jones I*, issues significantly related to the § 1983 claims were also resolved, and this resolution altered the relationship of the parties. The court found that the DEA acted arbitrarily, capriciously, and in abuse of its discretion in rejecting Mr. Jones' *in forma pauperis* petition and in refusing to waive its bond requirement for a forfeiture hearing. *Jones I,* 801 F.Supp. at 28. Accordingly, the summary forfeiture proceedings were inappropriate and a full hearing was in order. The court found that the DEA had abused its discretion under its own regulations, and so the constitutional questions need not be reached. *Id.* Nevertheless, it was clear that Mr. Jones' had prevailed under his Administrative Procedures Act ("APA") claim on the same set of facts crucial to his due process claims.

Moreover, the relief achieved through the APA claim was partially identical to that sought through the constitutional claims—a hearing on the seizure and forfeiture (i.e., due process before property is permanently taken). It is just such situations for which the liberal "prevailing party" definition was intended, for Congress recognized that courts often will not reach constitutional issues when cases can be resolved without doing so. *See Texas State Teachers Ass'n,* 489 U.S. at 790, 109 S.Ct. at 1492.

The result in *Jones I,* like that result in *Jones II,* altered the relationship of the parties. Whereas before the court's decision, Mr. Jones had no further rights to contest the forfeiture, after the court's decision Mr. Jones' bond requirement was waived and a hearing on the forfeiture was set. This relief was more than nominal. Waiver of the bond requirement alone (the bond would have been $900) was of significant benefit to Mr. Jones, and the right to a hearing on the forfeiture gave Mr. Jones a right he previously had lost—the right to seek return of his $9,000. *Cf. Krichinsky v. Knox County Schs.,* 963 F.2d 847, 850 (6th Cir.1992) (to meet the "alteration of relationship" standard, changes in behavioral relationships between the parties, and not just monetary changes, suffice).

Under both *Jones I* and *Jones II,* Mr. Jones prevailed on issues that achieved much of the benefit he sought through institution of his § 1983 claims. Moreover, success on these issues led to a significant change in the legal relationship of the contesting parties. Therefore, an award of attorney fees is within the discretion of the court under 42 U.S.C. § 1988.

■ Notwithstanding this conclusion, the question remains as to who may be made to pay these fees. Ordinarily the U.S. government and its agencies are not liable for

---

1. That the forfeiture hearing was conducted pursuant to this court's authority under the Administrative Procedures Act is largely irrelevant to the ultimate question of fees, for the plaintiff clearly achieved some of the results intended by his institution of the § 1983 suit and the constitutional violations alleged under § 1983 were crucial to such success. The factual bases for the APA and § 1983 claims were so intertwined, indeed they were identical in almost all respects, such that these claims were sufficiently related to trigger the *Texas State Teachers Ass'n* test. *See Texas State Teachers Ass'n,* 489 U.S. at 789, 109 S.Ct. at 1492 (common core of facts to legal claim makes necessary an analysis of " 'the degree of success obtained' " to determine fee awards under § 1988 (citation omitted)).

§ 1983 damages due to their sovereign immunity, but this immunity may be removed for purposes of fees under § 1988 if a body of the federal government collaborated with state actors to deprive a citizen of her constitutional rights.[2] *See, e.g., Merritt v. Mackey,* 932 F.2d 1317, 1323 (9th Cir.1991); *Martin v. Heckler,* 773 F.2d 1145, 1153 (11th Cir.1985) (noting the consistency across circuits of this view). The state actors must have played some significant role in the action to award fees against the federal government on the basis of this state action. *See Merritt,* 932 F.2d at 1323.

■ In this case, the court specifically ruled that the agents involved in the forfeiture and seizure were state actors. *See Jones I,* 801 F.Supp. at 21 ("Under the test announced in *West* [*v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) ], … the officers acted under color of state law when they interrogated the plaintiff and seized his currency."). Moreover, the role of the officers in the case was crucial. The officers aided in the seizures that formed the basis of the subsequent forfeiture. Without the actions of these state actors, this case would never have arisen. As to the DEA's involvement with these state actors, the court noted that these officers "acted at the direction of the DEA and in furtherance of its goals." *Id.* This is perhaps the paradigm case of state-federal collaboration. The officers possessed their authority solely by virtue of state law but exercised this authority to advance federal goals. Clearly the DEA and the state officers collaborated, and this collaboration led to the constitutional violations documented above. The DEA has waived its sovereign immunity with regard to attorney fees in this case.

### B. Fees Under the Equal Access to Justice Act

Given the foregoing conclusion, the question of fees under the Equal Access to Jus-

tice Act ("EAJA") need not be addressed. It is worth pointing out, however, that fees under this statute would also be in order.

■ The EAJA provides for fee awards against the U.S. "[e]xcept as otherwise specifically provided by statute" and "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C.A. § 2412(d)(1)(A) (West Supp. 1993). None of these exceptions apply here. First, there is no statute specifically barring such an award. Second, the court has made clear that the government was not substantially justified in its positions in either *Jones I* or *Jones II.* With regard to the denial of Mr. Jones' bond waiver application, the court stated that "[t]he DEA's decision [to deny plaintiff's application] affronts established, relevant standards for indigence. *Jones I,* 801 F.Supp. at 27. With regard to the seizure of Mr. Jones' money, the court stated that this was " 'a forfeiture proceeding [started] in bad faith with wild allegations based on the hope that something [would] turn up to justify [the] suit.' " *Jones II,* 819 F.Supp. at 716 (citation omitted).

Finally, there is no injustice to an award of fees in this case. Certainly the court had reservations about the truthfulness of Mr. Jones at various points in the proceeding and wondered about the secret purpose of Mr. Jones, *see id.* at 723, but likewise the court had considerable questions about the conduct and quality of decision-making of the government. The government initiated a property seizure on nothing more than mere suspicion and then prolonged the case by its recondite reasoning with respect to denial of the bond waiver. This difficulty and tenacity by the government, in a case where the government had only a minimal interest in the bond and in the face of little valid evidence of wrongdoing on Mr. Jones' part, no doubt worked a great hardship on Mr. Jones and his family.

---

2. This proposition derives from 28 U.S.C. § 2412(b), which provides that the U.S. Government, its agencies, or its officials acting in their official capacities shall be liable for fees and expenses to the same extent any other party would be liable under the terms of any statute specifically providing for such an award. In order for another party to be liable under 42 U.S.C. § 1983, and thus the government liable for attorney fees under 42 U.S.C. § 1988 via 28 U.S.C. § 2412(b), there must have been state action. *See Rodriguez v. Handy,* 873 F.2d 814, 817 (5th Cir.1989).

At best, each side's unattractive characteristics cancel one another out. No party to this suit was pristine.[3]

A fee award would be appropriate under EAJA, as well as under § 1988. To the extent such awards make the federal government more prudent in its forfeiture proceedings, these awards serve a very important purpose given the possibility of abuse that exists in our current forfeiture laws. *See Jones II*, 819 F.Supp. at 724 (discussing the "dangerous potentiality for abuse extant in the forfeiture scheme").

### III

Fees shall be awarded against the defendants pursuant to 42 U.S.C. § 1988. This statute provides for a granting of reasonable attorney fees. The government contests the reasonableness of the approximately $117,000 requested by the plaintiff and asks for an extension of time in which to address the question of reasonable fees. In support of its request, the government claims that it has not had time to gain expert opinion on this question but is in the process of doing so. Most likely the government has put investigation of this matter on hold until resolution of the question of whether any fees are appropriate. Accordingly, an extension of time is appropriate, and an extension of 45 days shall be granted to give the government sufficient time to contest the amount of such fees. An Order in accord shall issue.

### ORDER

For the reasons stated in the accompanying Memorandum, the plaintiff's application for attorneys' fees is hereby PARTIALLY GRANTED in that the plaintiff's right to fees under 42 U.S.C. § 1988 against all defendants is established. The court withholds judgment at this time as to the exact amount of fees that shall be awarded. The defendants are given 45 days from the date of entry of this Order to contest the amount of

fees claimed by plaintiff, in which time plaintiff may offer a rebuttal to any response.

IT IS SO ORDERED.

---

**3.** This analysis of the lack of injustice of a fee award applies equally to a fee award under 42 U.S.C. § 1988. Thus, there are no special circumstances that would render an award of fees unjust under § 1988, either. *See Martin v. Heckler*, 773 F.2d 1145, 1149 (11th Cir.1985) (discussing this exception under § 1988).