Rebecca A. WIMPY, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. CIV.A. 4:02–CV–0249.

United States District Court,
N.D. Georgia,
Rome Division.

Aug. 31, 2004.

Dale Lane Buchanan, Dale L. Buchanan & Associates, Eric L. Buchanan, Eric Buchanan & Associates, Chattanooga, TN, for Plaintiff.

Mary Ann Sloan, Regional Chief Counsel, Social Security Administration, Robert E. Hodum, Jr., Assistant Regional Counsel, Social Security Administration, Lisa D. Cooper, Stephanie H. Webster, Office of United States Attorney Northern District of Georgia, Atlanta, GA, for Defendant.

## ORDER

HAROLD L. MURPHY, District Judge.

This case is before the Court on Plaintiff's Motion for Attorney Fees [20] and the Report and Recommendation of United States Magistrate Judge Walter E. Johnson [23].

On August 10, 2004, Judge Johnson issued his Report and Recommendation in this case. Judge Johnson has recommended that the Court deny Plaintiff's Motion for Attorney Fees.

The Court has reviewed the Report and Recommendation and the record in this case, and concludes that the Report and Recommendation is correct in law and in fact. The Court therefore adopts the Report and Recommendation.

ACCORDINGLY, the Court **ADOPTS** the Report and Recommendation of United States Magistrate Judge Walter E. John-

son [23], and DENIES Plaintiff's Motion for Attorney Fees [20].

### FINAL REPORT AND RECOMMENDATION

JOHNSON, United States Magistrate Judge.

Before the Court is Plaintiff's Motion for Attorney Fees [20]. Pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), Plaintiff sought the Court's review of Defendant's denial of disability insurance benefits [3]. In adopting the undersigned's Final Report and Recommendation [16],[1] the Court ordered [17] that the case be remanded to defendant under the fourth sentence of 42 U.S.C. § 405(g). The Court entered judgment [18] on April 15, 2004.

On May 7, 2004, Plaintiff filed her timely request [20] for attorney fees and costs in the amount of $2,144.00 under the Equal Access to Justice Act (the "EAJA"). 28 U.S.C.A. § 2412 (West 1994 & Supp.2003). Plaintiff bases her Motion [20] upon 13.4 attorney hours at a rate of $115.00 per hour, 13.4 paralegal hours at a rate of $45.00 per hour. Pl.'s Mot. [20] at 7.

### I. LEGAL BACKGROUND

Under the EAJA, "a party prevailing against the United States in court, including a successful Social Security benefits claimant, may be awarded fees payable by the United States if the Government's position in the litigation was not 'substantially justified.'" *Gisbrecht v. Barnhart*, 535 U.S. 789, 796, 122 S.Ct. 1817, 152 L.Ed.2d 996 (2002) (quoting 28 U.S.C. § 2412(d)(1)(A)). The Supreme Court has construed "substantially justified" to mean "justified to a degree that could satisfy a

reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). The EAJA also includes an exception that the court may deny the prevailing party's fees if "special circumstances make an award unjust." 28 U.S.C.A. § 2412(d)(1)(A) (2003).

### II. PARTIES' ARGUMENTS

Defendant "concedes that Plaintiff is a prevailing party" and "does not argue that the final administrative decision was substantially justified in this case." Def.'s Br. [21] at 1–2. However, the Commissioner argues that "special circumstances" make an award of fees unjust in this case. *Id.* at 2. Defendant points out that this Court remanded the ALJ's decision solely to consider a late-submitted medical opinion by Dr. Naymick that the ALJ did not discuss. *Id.* (citing R & R[16][2] at 21–22). Defendant then quotes the following passages from the adopted Report and Recommendation, which explain the late submission by Plaintiff:

"[T]he 'new' evidence from December 6, 2001, existed roughly six months prior to the June 5, 2002, hearing and the June 20, 2002, decision by the ALJ. Therefore, the new evidence relates "to the time period on or before the date" of the ALJ's decision." *See* 20 C.F.R. §§ 404.970(b), 416.1470(b) (Lexis 2002). However, that substantial amount of time before the June 18, 2002, filing with the OHA draws all the more attention to Plaintiff's failure to file the Opinion earlier. Notably, Plaintiff filed other medical records from the same doctor, which were created before and after the December 6, 2001, Opinion....

---

1. Neither party filed objections to the undersigned's Final Report and Recommendation [16].

2. Adopted by the Court by Order [17] on April 14, 2004.

[T]his Opinion appears to be the sole medical statement directly supporting disability. The document should have figured prominently in Plaintiff's filed record. Nonetheless, as Defendant points out, Plaintiff neglected to list the Opinion in the exhibits relied upon in her June 3, 2002, Prehearing Order in Represented Cases worksheet for her claim that she was functioning 'below sedentary.' Further, she failed to mention the Opinion in the hearing as a document that would be forthcoming for consideration. Plaintiff does not offer any explanation in her initial Brief [11] or Reply [15] for failing to file the Opinion with the rest of the medical records, even though she filed a Reply [15] after Defendant pointed out the lack of good cause in its response. Def.'s Br. [12] at 6–7. In the absence of any excuse, it is difficult for the undersigned to see any reason for the late filing other than negligence.

. . . .

Plaintiff now requests that the ALJ—through likely no fault of his own—reconsider his decision to include evidence in existence six months earlier that Plaintiff simply neglected to file or alert him about until weeks after the hearing. . . . This unnecessary use of judicial resources . . . takes away from timely consideration of more meaningful, justified claims . . . and was at best unfortunate and certainly avoidable."

*Id.* at 2 (quoting R & R[16] at 20–22) (internal citations omitted).

The Commissioner emphasizes the Court's discussion of Plaintiff's attorney's presumptive negligence, and that the attorney has offered no reason why the December 6, 2001, medical report could not have been submitted earlier than two days before the ALJ issued the final decision. Def.'s Br. [21] at 3 (citing 20 C.F.R.

§§ 404.1740(b)(1), 416.1540(b)(1)) (describing affirmative duties of claimant's representative to promptly provide all relevant evidence). Therefore, according to Defendant,. "since this entire litigation was avoidable—if only the attorney had exercised proper diligence—the facts of this case make an award of fees under the EAJA unjust. If Plaintiff is awarded EAJA fees under these circumstances, it will likely encourage her counsel to engage in similar conduct in the future." *Id.* at 4.

In reply, Plaintiff "concedes negligence in failing to submit Dr. Naymick's assessment form, dated December 6, 2001, prior to Ms. Wimpy's hearing [on June 5, 2002]." Pl.'s Reply [22] at 2. However, Plaintiff's attorney counters that when the oversight was discovered, his office acted and was able to correct the mistake prior to the ALJ issuing his decision. *Id.* Plaintiff emphasizes that the assessment became part of the record that the ALJ was required to consider. *Id.* Further, even if it is reasonable that the ALJ overlooked the late-filed report, Plaintiff asserts that the Commissioner's subsequent actions are less excusable in failing to mitigate the problem. *Id.* at 3. Plaintiff states that the Naymick assessment was re-filed with the Appeals Council; however, despite the fact that the assessment contradicts the ALJ's decision, the Appeals Council did not address it but rather issued a form denial letter. *Id.* at 3–4.

Further, in the Complaint [3] filed in this Court, Plaintiff highlighted the issue. Pl.'s Reply [22] at 4. However, Plaintiff complains that the record filed by the Commissioner failed to include the assessment, which Plaintiff suggests was either lost by the Commissioner or never associated with the file. *Id.* Additionally, despite the "received" stamp (purportedly) from the Chattanooga Office of Hearings and Appeals ("OHA"), the Commissioner

proceeded to argue against remand and suggest that there was no proof that the assessment was ever filed by Plaintiff. *Id.* at 4–5.

Plaintiff notes that the "special circumstances" exception for "EAJA fees is 'founded in equitable concepts.'" Pl.'s Reply [22] at 5 (quoting *Martin v. Heckler,* 773 F.2d 1145, 1149 (11th Cir.1985)). Therefore, a party asserting such an equitable defense "must come with clean hands." *Id.* at 5–6 (citing *R.C. by Ala. Disabilities Advocacy Program v. Nachman,* 969 F.Supp. 682, 688 (M.D.Ala. 1997)). Therefore, Plaintiff asserts that despite Defendant's blame on "Plaintiff for failing to exercise proper diligence, Defendant has since had multiple opportunities herself to either avoid entirely or curtail the extent of litigation, but failed to do so. Lacking 'clean hands,' Defendant should not avoid an EAJA award based on 'special circumstances.'" *Id.* at 6.

### III. *ANALYSIS*

Plaintiff accurately describes the "special circumstances" exception as a matter of equity, which would be subject to "unclean hands" considerations. *Martin,* 773 F.2d at 1149. As a rarely-invoked defense, there are limited cases discussing the exception. The case cited by Plaintiff, although applying the EAJA to a civil rights case rather than Social Security, has perhaps the most extensive discussion. In denying the "special circumstances" defense in *Martin,* the Eleventh Circuit noted the following factors that would equitably weigh against the government defendant: whether the government had opportunity to correct the problem without litigation; whether litigation was the necessary catalyst to bring about the appropriate government action; and whether the plaintiff's costs could have been curtailed by appropriate government

actions after the suit was filed. *Id.* at 1150–51. The court added that a defendant's "good faith, lack of culpability, or prompt remedial action do not warrant a denial of fees under the special circumstances preclusion." *Id.* at 1150. The court also recognized that the benefit from the litigation—such as how much earlier a desirable outcome was reached than if the plaintiff had not filed the suit and relied on the government's own initiative—"might be relevant in determining the appropriate amount of fees, but it would not justify denial of all fees." *Id.* at 1151.

In the case at hand, Plaintiff appears to suggest that all of the three considerations weigh against Defendant. According to Plaintiff, the Commissioner had opportunities with the ALJ, Appeals Council, and the initial filing of this case to avoid litigation and Plaintiff's expenses by conceding to a reconsideration that would include the late-filed report. Pl.'s Reply [22] at 5. However, Plaintiff's argument rests upon the assumption that there was no dispute as to the filing of the Naymick report. As the undersigned discussed in the Report and Recommendation [16], Defendant disputed whether the proffered file stamp came from the OHA, as there were no markings to identify the source of the stamp, just a date. R & R [16] at 15 (citing Def.'s Br. [12] at 4–5). Defendant argued that Plaintiff's arguments that the ALJ overlooked or rejected the assessment were without merit, because Plaintiff only presented a cover letter addressed to the ALJ on a certain date that included an anonymous date stamp but no verifiable proof that the date stamp was from the OHA or that the package was submitted to the OHA. *Id.* at 16 (citing Def.'s Br. [12] at 6).

 The undersigned (as adopted by the Court) ultimately found that the pre-

sumption of validity of the stamp must fall in favor of Plaintiff, because the burden rested on Defendant as the party challenging the proffered evidence to establish that the stamp was not used by the OHA. R & R[16] at 17–18. However, the undersigned recognized meaningful deficiencies by both parties on the issue, and merely found for Plaintiff due to the presumptions inherent to a challenge on another party's evidence. *Id.* Therefore, Defendant's position of challenging the validity of the anonymous stamp was reasonable.

Further, the undersigned noted that the validity of the date stamp was crucial to Plaintiff's argument, because the negligently[3] late evidence fails the "good cause" test for consideration of "new and material" evidence by the Appeals Council if it was not timely submitted to the ALJ. R & R[16] at 19–21. Therefore, the Appeals Council should have explicitly discussed the report only if it was timely filed with the ALJ. However, the report lacked clearly legitimate proof of prior filing, either by an identified stamp or other receipt from the OHA. Therefore, although the Appeals Council likely should have discussed why it did not consider the report, it does not appear to have maliciously disregarded the late evidence filed without "good cause." Accordingly, given the anonymous appearance of the stamp and its significance as the only evidence establishing the admissibility of the late-filed report, the Commissioner's decision to press forward with litigation to dispute the validity of considering the report was reasonable and, in fact, prudent.

■ The Eleventh Circuit in *Martin* stated that the government's good faith or lack of culpability is not sufficient to establish a "special circumstance" to deny fees to the prevailing plaintiff. *Martin,* 773

F.2d at 1150. However, here, the "special circumstance" is not Defendant's good faith or lack of culpability but rather Plaintiff's negligence. Contrary to *Martin,* the only focus on Defendant's actions here is for Plaintiff's defense to the "special circumstance," not for Defendant to establish the "special circumstance."

With regard to Plaintiff's "unclean hands" attack against Defendant, the case cited by Plaintiff to define "clean hands" equates it with good faith. *See R.C. by Ala. Disabilities Advocacy Program,* 969 F.Supp. at 688 (citing 27A Am.Jur. Equity § 126 (1996)). Therefore, although the Commissioner's good faith in pursuing the validity of considering Plaintiff's late report does not establish a "special circumstance" to deny fees, the legitimacy of Defendant's concerns does avoid the claim of "unclean hands" against Defendant. Accordingly, Plaintiff's only rebuttal to Defendant's assertion of a "special circumstance" is unavailing.

Given the equitable nature of "special circumstances," the Court also notes that the *Martin* court considered the nature and extent of the benefit obtained by the litigation. 773 F.2d at 1151. Here, the purpose of the litigation was, as Plaintiff admits, to redress her own negligence in failing to file the report from Dr. Naymick in a timely manner. Pl.'s Reply [22] at 2. As noted in the Report and Recommendation [16],

> Claimant sent Dr. Naymick's Opinion to the OHA almost two weeks after the hearing (more than six months after it was completed), with no indication to the ALJ that he should anticipate the document. The OHA receives a high volume of correspondence and filings on a daily basis. Even assuming that the OHA

---

**3.** Plaintiff did not provide any reasons for the tardiness in her briefs on appeal [11, 13].

She concedes here that the late filing was due to negligence. Pl.'s Reply [22] at 2.

received the Opinion on June 18, it is very conceivable that the ALJ would not have received the document personally through the OHA processing until after the June 20 decision was issued. R & R[16] at 21. Therefore, even giving Plaintiff the benefit of the doubt that the file stamp was valid and the opinion was filed on June 18, there is still little indication that the ALJ committed a malicious wrong by failing to discuss it. By and large, this litigation was redressing Plaintiff's own admitted negligence in waiting six months to file an opinion that should have been filed immediately. 20 C.F.R. §§ 404.1740(b)(1), 416.1540(b)(1). Further, given the reasonableness of the government pursuing a determination regarding the validity of the filing, there is no reason to assume that "the litigation [would] simply achieve at an earlier date a result that would eventually occur without the litigation" so as to hold the government responsible for the extent of the fees for not acceding early on. *Martin*, 773 F.2d at 1151.

Finally, as Defendant points out, because the origin of the litigation was Plaintiff's own negligence, granting fees would in effect be likely to "encourage her counsel to engage in similar conduct in the future." Def.'s Br. [21] at 4. Given the amount of paperwork processing at the OHA, such extremely late filing sets the stage for the ALJ not to receive the document in time for adequate, if any, consideration. In the case at hand, this late filing was the only source of the remand for Plaintiff, which creates, if not an incentive to repeat the action, little incentive to prevent it. Therefore, equitable considerations also weigh against an award of fees here.

## IV. CONCLUSION

In light of the foregoing, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Attorney's Fees [20] be **DENIED.**[4]

The Clerk is **DIRECTED** to terminate the reference to the Magistrate Judge.

Aug. 10, 2004.

---

4. In alternative, should the Court decide not to adopt the undersigned's Recommendation, the undersigned suggests that the extent of Plaintiff's own culpability for the litigation merits reducing the attorney's fees by half.