**Roosevelt LOVE, et al., Plaintiffs–Appellants,**

v.

**Emit C. DEAL, et al., Defendants–Appellees.**

No. 92–8792.

United States Court of Appeals,
Eleventh Circuit.

Oct. 29, 1993.

David Buffington, Orion L. Douglass, Brunswick, GA, Neil Bradley, ACLU, Atlanta, GA, for plaintiffs-appellants.

James B. Franklin, Statesboro, GA, for defendants-appellees.

Before FAY and HATCHETT, Circuit Judges, and JOHNSON, Senior Circuit Judge.

JOHNSON, Senior Circuit Judge:

The Plaintiffs–Appellants ("Plaintiffs") appeal from the district court's order denying one of their lawyers attorney's fees for work he performed on their voting rights case. On appeal, the Plaintiffs raise two issues. First, they contend that the district court erred by failing to hold an evidentiary hearing prior to denying their fee request. Second, they argue that even if an evidentiary hearing is not required, the reasons advanced by the district court are insufficient to justify the denial of attorney's fees. Because we conclude that both of these arguments are meritorious, we reverse.[1]

## I. STATEMENT OF FACTS

### A. Factual background

The Plaintiffs are six African–American residents and voters of Bulloch County, Georgia. The Defendants–Appellees ("Defendants") are the members of the Board of Commissioners of Bulloch County and the Probate Judge, who is the election superintendent.

In 1979, the Plaintiffs brought a voting dilution action against the Defendants under Section 2 of the Voting Rights Act of 1965, 42 U.S.C.A. § 1973, and under the Fourteenth and Fifteenth Amendments to the United States Constitution. That litigation resulted in the entry of a Consent Decree in 1983 that established a four member/two district plan. The Decree provided that if data from the 1990 census indicated that the population had shifted to create a deviation from the ideal apportionment, the parties would use their "best efforts in good faith" to agree on a substitute plan. If the parties were unable to agree upon a substitute plan, the Decree required both parties to submit their proposed plans to the district court no later than 60 days prior to opening of qualifying for the August 1992 primary.[2] Throughout this first round of litigation, the plaintiffs were represented solely by David Buffington.

The 1990 census revealed that the population had shifted dramatically so as to require a new plan. In October 1991, the Defendants began the process of map-drawing to comply with the Decree. On December 11, 1991, the Defendants presented a proposed plan to the Plaintiffs, but the Plaintiffs, who were unrepresented by counsel at that time, rejected the plan. On January 17, 1992, the Defendants presented two new plans to the Plaintiffs, but these were also rejected. None of the Defendants' proposed plans contained a single majority black district.

Buffington became reinvolved in the case on January 22, 1992, when he was contacted by one of the Plaintiffs. Buffington contacted the Defendants' counsel that same afternoon, and the next morning contacted the ACLU Southern Regional Office in Atlanta to request that the ACLU demographer prepare a new voting district plan for Bulloch County. Buffington then informed the Defendants' counsel that he would try to have a proposed plan by January 29, 1992.

Buffington did not receive the ACLU plans in time to meet his self-imposed deadline of January 29. On February 17, 1992, Buffington met with the Plaintiffs and the local chapter of the NAACP to discuss possible

---

1. In their statement of issues, the Plaintiffs also raise the question of whether the district court erred by refusing to amend an earlier order which contained a footnote critical of one of their counsel. However, their brief never addresses the issue and, consequently, it is deemed abandoned. *See Continental Technical Servs., Inc. v. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir.1991) ("An argument not made is waived."); *Harris v. Plastics Mfg. Co.*, 617 F.2d 438, 440 (5th Cir.1980) (per curiam) (where issue raised but not argued, deemed abandoned). *See also* FED.R.APP.P. 28(a)(5) ("argument shall contain discussion of issues presented").

2. After the Consent Decree was entered, the Georgia legislature changed the primary date from the second Tuesday in August to the third Tuesday in July, thus advancing the opening of qualifying from May 27, 1992 to April 27, 1992. *See* O.C.G.A. § 21–2–150 (Michie Supp.1993). Although this change in primary date could have had the effect of advancing the deadline for the submission of plans from March 27, 1992 to February 27, 1992, the Decree was never amended to reflect the change. The Defendants, however, proceeded under the assumption that the Decree was effectively amended to reflect the changed primary date.

plans. At that meeting, the Plaintiffs indicated that they would like to consider a seven member/two district plan (as opposed to the four member/two district plan currently in place) in which the African–American minority would control two seats. Buffington met with the Defendants the following day, and informed them that the Plaintiffs were unable to agree on a proposal at that time.

On February 21 and 22, 1992, Buffington received several plans from the ACLU demographer. On February 24, 1992, Buffington faxed two of the ACLU plans to the Defendants' counsel, expressly advising that he had not received his clients' approval of either of these plans. On February 25, 1992, the Defendants adopted one of the ACLU plans as its own—a three member/two district plan which provided for one district with an African–American voting age population of 50.9%. On February 27, 1992, the Defendants filed this plan with the district court, based on their belief that the Consent Decree's time bar had been advanced by the change in the primary date.

On February 13, 1992, Buffington received an order from the Supreme Court of Georgia suspending him from practice in Georgia State courts for his failure to complete Georgia's mandatory continuing legal education ("CLE") requirement. That same day he informed one of the Plaintiffs of his suspension, and the need to retain new counsel were the suspension not lifted shortly.

In fact, Buffington had completed the CLE requirement. In an attempt to correct the mistake, he contacted the Georgia Commission on Continuing Lawyer Competency (the "CCLC"), the arm of the Georgia State Bar that administers the CLE program. The CCLC confirmed that their records showed Buffington had completed the CLE requirement, and that a mistake had been made. Upon further inquiry, however, Buffington was told that he could not be immediately reinstated. Rather, he had to apply to the CCLC's Compliance and Exemptions Committee. Buffington was finally reinstated by the Georgia Supreme Court on April 1, 1992.

In the Southern District of Georgia, suspension from the state courts of Georgia is a ground for discipline, but it does not result in automatic suspension. *See* S.D.GA.LOC.R. SEC. IV 5(b). Nevertheless, the federal court suspended Buffington by summary order on February 26, 1992, and did not reinstate him until April 6, 1992. Immediately after being suspended from practice in the federal courts, Buffington met with the Plaintiffs to recommend that they retain other counsel. At Buffington's urging, the Plaintiffs retained Jerry Wilson.

## B. Procedural background

### 1. *Redistricting order*

On April 16, 1992, the district court conducted a hearing on the proposed plans, and on April 23, 1992, the court entered its order adopting a plan favored by the Plaintiffs: a seven member/two district plan. Although only the issue of redistricting was before the court, the Order included a footnote extremely critical of Buffington, suggesting that the Plaintiffs might have "arrive[d] at a better solution" if Buffington had not been involved in the case.

The Plaintiffs moved the court to amend its order by striking the footnote critical of Buffington. *See* FED.R.CIV.P. 52(b) and 59(a). They contended that there was no support in the record for the district court's factual findings that Buffington had been dilatory or that his actions had prejudiced the Plaintiffs. In addition, the Plaintiffs requested that the court permit them to submit evidence rebutting the court's conclusions. The court summarily denied the motion.

### 2. *Attorney's fees*

On May 13, 1992, the Plaintiffs filed a timely motion for attorney's fees and expenses pursuant to 42 U.S.C.A. § 1973*l* (e), and 42 U.S.C.A. § 1988, claiming that they were "prevailing parties" within the meaning of those fee statutes. The Defendants opposed the motion on two grounds. First, they argued that the Plaintiffs were not prevailing parties. Second, they argued that if the district court found that the Plaintiffs were prevailing parties, the fees requested should be reduced to a reasonable amount.

On June 3, 1992, without hearing and before the expiration of the thirty-day period in which details and documentation of a fee application may be filed, *see* S.D.Ga.Loc.R. Sec. I 11.2(c), the district court entered an order denying the motion for attorney's fees and expenses in toto on the basis that the motion was unsupported. The Plaintiffs filed a timely motion to alter or amend the order, *see* Fed.R.Civ.P. 59(e), together with time and expense itemizations of both counsel, sworn declarations, and sworn statements attesting to the market rate for lawyers in Brunswick, Georgia.

On July 10, 1992, the district court entered a new order. The district court found that the Plaintiffs were "prevailing parties." Nevertheless, the district court awarded fees to only one of the Plaintiffs' two attorneys. It denied Buffington's request for fees because it found that Buffington did not insist that the Plaintiffs hire a new attorney immediately upon learning of his suspension. According to the district court, this failure prejudiced the Plaintiffs because it impaired their ability to arrive at a better settlement.

## II. DISCUSSION

### A. Failure to hold a hearing

■ We review the district court's failure to conduct an evidentiary hearing on an application for attorney's fees for an abuse of discretion. *King v. McCord*, 621 F.2d 205, 206 (5th Cir.1980). Although an evidentiary hearing is not always necessary, "where there is a dispute of material historical fact ... an evidentiary hearing is required." *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1305 (11th Cir.1988).

Such a dispute exists here. The district court premised its denial of Buffington's fees on its finding that the Plaintiffs were prejudiced by Buffington's failure to immediately inform his clients of his suspension. The affidavits submitted by the Plaintiffs sharply dispute this finding. They indicate that on the day Buffington learned of his suspension

from the Georgia state courts, he contacted Plaintiff Merritt, who was himself a lawyer, to advise him of the potential need to retain new counsel. As soon as Buffington learned of his suspension from the federal courts, Buffington told Merritt that it was time to find new counsel. At Merritt's request, Buffington then met with the Plaintiffs and the NAACP to inform them of the need to retain new counsel as quickly as possible, which led to the hiring of co-counsel Jerry Wilson. Given this sharp dispute, we hold that the district court's failure to conduct an evidentiary hearing was an abuse of discretion.[3]

■ The Defendants maintain that the district court's failure to conduct an evidentiary hearing was not an abuse of discretion because the Plaintiffs never requested such a hearing. Contrary to the Defendants' contention, a review of our precedent reveals that it is not necessary for a plaintiff to request an evidentiary hearing. Rather, the essential factor is whether there is a dispute of material fact that cannot be resolved from the record. *Compare National Treasury Employees Union v. IRS*, 735 F.2d 1277, 1279 (11th Cir.1984), and *Marable v. Walker*, 704 F.2d 1219, 1221–22 (11th Cir.1983) (although no request for evidentiary hearing, district court abused its discretion by failing to conduct hearing where dispute of material fact could not be resolved from the record), *with Aetna Ins. Co. v. Meeker*, 953 F.2d 1328, 1334–35 (11th Cir.1992) (where no request for hearing and no dispute of material fact, district court did not abuse its discretion by failing to hold evidentiary hearing).

### B. Denial of attorney's fees

■ We review the district court's denial of attorney's fees for an abuse of discretion. *Maloney v. City of Marietta*, 822 F.2d 1023, 1025 (11th Cir.1987) (reviewing denial of attorney's fees motion made pursuant to section 1973*l*(e)); *Solomon v. City of Gainesville*, 796 F.2d 1464, 1466 (11th Cir. 1986) (reviewing denial of attorney's fees motion made pursuant to section 1988 for an

---

3. In addition, we are perplexed by the district court's assertion that "the results of this litigation might have been more favorable to the Plaintiffs if they had hired Jerry Wilson earlier."

The Plaintiffs got exactly what they wanted out of this litigation—a seven member/two district plan. We fail to see how the result could have been more favorable to the Plaintiffs.

abuse of discretion). While the district court is normally accorded wide discretion in fashioning an award of attorney's fees, the court's discretion to deny fees altogether is "exceedingly narrow." *Maloney,* 822 F.2d at 1025 (citing cases). As stated by the Supreme Court, prevailing plaintiffs "should ordinarily recover an attorney's fee unless special circumstances would render an award unjust." *Newman v. Piggie Park Enters., Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968) (per curiam).[4]

Because the special circumstances exception is a judicially created concept, we have held that it should be construed narrowly so as not to interfere with the congressional purposes behind the fee award statutes. *Martin v. Heckler,* 773 F.2d 1145, 1149–50 (11th Cir.1985) (en banc). In *Martin,* this Court noted that one of the primary purposes of the fee award statutes was "to encourage civil rights enforcement by plaintiffs acting as 'private attorneys general.'" *Id.* In a case such as this one, where the defendant is a government entity, "the plaintiffs are not merely 'private attorneys general,' they are the only attorneys general." *Id.* (citing cases).

In giving effect to that purpose, this Court has recognized four situations which might constitute special circumstances justifying the denial of a fee award:

> (1) where the plaintiff's action asserted essentially a private tort claim for money damages, (2) where the plaintiff was not instrumental in achieving the remedy sought, (3) where plaintiffs challenged an antiquated, rarely enforced statute, and (4) where the plaintiff through a settlement or consent order agreed to compromise his right to pursue subsequent fees.

*Maloney,* 822 F.2d at 1027 (citing *Martin,* 773 F.2d at 1151). *See also Riddell v. Na-*

tional Democratic Party, 624 F.2d 539, 544–45 (5th Cir.1980) (collecting cases). Noticeably absent from this list is the reason advanced by the district court—prejudice to the prevailing parties caused by their own attorney. Accordingly, we hold that the district court abused its discretion in finding that this case presented special circumstances warranting the denial of attorney's fees.

### III. CONCLUSION

That portion of the district court's Order denying the Plaintiffs' request for attorney's fees for Buffington is

REVERSED and REMANDED.

---

**4.** Although *Newman* concerned a fee application made pursuant to 42 U.S.C.A. § 2000a–3(b), the standard announced in *Newman*—that fees should be awarded to prevailing parties absent special circumstances—applies to fee applications made pursuant to both § 1988 and § 1973*l* (e). The Supreme Court itself has applied the *Newman* standard to fee applications made pursuant to § 1988. *See Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983). While the Supreme Court has not

had occasion to apply the *Newman* standard to § 1973*l* (e) fee applications, the legislative history to § 1973*l* (e) indicates that Congress intended for courts to apply the *Newman* standard when considering § 1973*l* (e) fee applications. *See* S.Rep. No. 295, 94th Cong., 1st Sess. 40 (1975), *reprinted in* 1975 U.S.S.C.A.N. 774, 807 (discussing *Newman* ). Relying on that legislative history, this Court has applied the *Newman* standard to a fee application made pursuant to § 1973*l* (e). *See Maloney,* 822 F.2d at 1025 n. 2.