**GEOWASTE OF GEORGIA, INC., Plaintiff,**

v.

**Joe D. TANNER, et al., Defendants.**

**Civ. A. No. 92–60–VAL (WDO).**

United States District Court,
M.D. Georgia,
Valdosta Division.

Feb. 10, 1995.

Patricia T. Barmeyer, Atlanta, GA, Wade H. Coleman, Valdosta, GA, for Geowaste of Georgia, Inc.

Brenda Sue Cole, Atlanta, GA, for Joe D. Tanner.

Nickolas P. Chilivis, John Knox Larkins, Jr., Atlanta, GA, Oris D. Blackburn, Jr., Valdosta, GA, for Fred Deloach, G. Norman Bennett, James H. Hall, Alvin Payton, Sr., Lowndes County, GA.

## ORDER

OWENS, Chief Judge.

Before the court is plaintiff's motion for an award of attorney fees brought pursuant to 42 U.S.C. § 1988. After careful consideration of the arguments of counsel, the factors relevant to such an award, and the record as a whole, the court issues the following order.

Plaintiff filed its complaint on April 28, 1992, alleging among other things that conditions imposed upon it by the State of Georgia violated the Commerce Clause of the United States Constitution by disallowing the importation and disposal of out-of-state waste at plaintiff's landfill. By order dated May 12, 1992, the court partially consolidated this case with *Southern States Landfill v. Georgia Department of Natural Resources,* 801 F.Supp. 725 (M.D.Ga.1992), insofar as the plaintiff in each sought to have Georgia's laws and regulations pertaining to "special solid waste" declared unconstitutional under the federal and state constitutions. After a hearing on plaintiffs' motions for summary judgment on June 11, 1992, the court granted preliminary injunctive relief against the enforcement of the statutes and regulations at issue. Plaintiffs' motions for summary judgment labeled the statutes and regulations as invalid under the dormant Commerce Clause. The court agreed, and accordingly declared those statutes and regulations pertaining to "special solid wastes" unconstitutional bur-

dens upon interstate commerce. *Southern States Landfill, Inc. v. Georgia Department of Natural Resources,* 801 F.Supp. 725 (M.D.Ga.1992). On the basis of this finding, final judgment was entered against Joe D. Tanner, in his capacity as Commissioner of the Georgia Department of Natural Resources, and against Harold F. Reheis, in his capacity as Director of the Environmental Protection Division of the Department of Natural Resources, in favor of plaintiff Geowaste on October 11, 1994. Geowaste promptly filed this motion for attorney fees on October 25, 1994.

Defendants initially oppose any award of attorney fees. Where the Commerce Clause is the constitutional source of the right violated, defendants propose that courts should consider the following factors: (1) reliance upon the unavailability of a fee award, (2) bad faith by either side, (3) the number of plaintiffs benefitted, and (4) the necessity of an award to attract competent counsel. *BFI Medical Waste Systems v. Whatcom County,* 983 F.2d 911, 913–14 (9th Cir.1993). As none of these factors are present, defendants maintain that to grant plaintiff's motion would contravene the purposes behind the attorney fees award statute.

Defendants also contend that special circumstances warrant the denial of a § 1988 award in this case. The Eleventh Circuit Court of Appeals has identified the following circumstances as justifying the denial of attorney fees under § 1988:

(1) Where the plaintiffs' action asserted essentially a private tort claim for money damages, (2) where the plaintiffs were not instrumental in achieving the remedies sought, (3) where plaintiffs challenged an antiquated, rarely enforced statute, and (4) where the plaintiff through a settlement or a consent order agreed to compromise his right to pursue subsequent fees.

*Love v. Deal,* 5 F.3d 1406, 1410 (11th Cir. 1993). Defendants claim that plaintiff in this case was not instrumental in achieving the results obtained through the instant litigation, which had been partially consolidated with *Southern States.* Defendants assert

832

that counsel for Southern States was primarily responsible for the outcome.

The Supreme Court has made it "clear that attorney fees may be available in Commerce Clause cases under 42 U.S.C. § 1988...." *Pioneer Military Lending, Inc. v. Manning,* 2 F.3d 280, 285 n. 4 (8th Cir.1993) (citing *Dennis v. Higgins,* 498 U.S. 439, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991)). What is not as clear, however, is whether attorney fees *should* be recoverable for violations of § 1983. Justice Kennedy, in a dissent joined by the Chief Justice, expressed reservations over fee shifting under § 1988 where the Commerce Clause provided the predicate right. "By making such fee awards available [to Commerce Clause plaintiffs], the Court does not vindicate the purposes of § 1983 or § 1988, but merely shifts the balance of power away from the States and toward interstate businesses." *Dennis v. Higgins,* 498 U.S. 439, 464, 111 S.Ct. 865, 879 (Kennedy, J., dissenting).

Two Circuit Courts of Appeals have since touched on the attorney fees issue when it is a Commerce Clause violation that precipitates the application of § 1988. In *Pioneer Military Lending, Inc. v. Manning,* 2 F.3d 280 (8th Cir.1993), the Eighth Circuit Court of Appeals remanded the case to the district court for consideration of the § 1988 issue. The court recognized Justice Kennedy's misgivings from *Dennis,* and reminded the lower court that " '[i]n some circumstances, even a plaintiff who formally "prevails" under § 1988 should receive no attorney's fees at all.' " *Manning,* 2 F.3d at 285 n. 4 (quoting *Farrar v. Hobby,* —— U.S. ——, ——, 113 S.Ct. 566, 575, 121 L.Ed.2d 494 (1992)). Specifically, the district court was to first determine whether fees should be awarded, and, if so, to then settle upon a reasonable amount. As to the latter question, it should be answered with an eye towards the "degree of success" obtained by the litigation. The "de-

gree of success" is in turn calculated by reference to " 'the extent of relief, the significance of the legal issue on which the plaintiff prevailed, and the public purpose served.' " *Id.* 2 F.3d at 286 n. 4 (quoting *Farrar,* —— U.S. at ——, 113 S.Ct. at 579 (O'Connor, concurring)).

The Ninth Circuit Court of Appeals, in *BFI Medical Waste Systems v. Whatcom County,* 983 F.2d 911, 913–14 (9th Cir.1993), similarly remanded the question of whether a Commerce Clause plaintiff was entitled to attorney fees under § 1988. After reminding the district court that fee awards are the rule rather than the exception, and that a court's discretion to deny fees to a prevailing party is very narrow indeed, the court of appeals charted a course for the district court to follow in exercising the discretion granted by § 1988. A district court in the Ninth Circuit properly informs its discretion to grant or deny fees with reference to the following factors: "1) the parties' reliance on the unavailability of a fee award; 2) the presence of bad faith by either party; 3) the size of the class benefitted by the litigation; and 4) the need for an attorney's fee in order to attract competent counsel to the suit." *BFI Medical,* 983 F.2d at 914.

█ This circuit recently revisited the standards and procedures employed in § 1988 cases. In *Love v. Deal,* 5 F.3d 1406, 1409–10 (11th Cir.1993), the Eleventh Circuit acknowledged that a district court possesses "wide discretion in fashioning an award of attorney's fees...." However, its discretion to deny fees altogether to a prevailing party is "exceedingly narrow"—"prevailing plaintiffs 'should ordinarily recover an attorney's fee unless special circumstances would render an award unjust.' " *Love,* 5 F.3d at 1410 (quoting *Newman v. Piggie Park Enters., Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968) (per curiam)).[1] Thus in

---

1. *BFI Medical Waste Systems* would thus seem inapposite in this circuit. The Ninth Circuit apparently contemplates a broader grant of discretion to its district courts in the initial determination of whether fees should be awarded at all. Although the Ninth Circuit respects the rule that fee awards are the rule rather than the exception, and that a district court's discretion to deny fees is very narrow, a district court properly informs

its discretion to deny or award fees by reference to such factors as "the need for an attorney's fee in order to attract competent counsel to the suit." *BFI Medical Waste,* 983 F.2d at 914.

In contrast to this procedure is that seemingly followed by the Eleventh Circuit. The "need to attract competent counsel" is an appropriate factor for consideration; however, it should inform

the Eleventh Circuit a district court may not deny fees to a prevailing party unless "special circumstances" are present; however, the court may exercise its broad discretion in shaping the contours of the award to be made.

To avoid a conflict with the purposes of § 1988, the "special circumstances" rendering an award unjust are narrowly construed by this circuit. *Love,* 5 F.3d at 1410. Several circumstances satisfying this criteria have been recognized in this circuit:

> (1) where the plaintiff's action asserted essentially a private tort claim for money damages, (2) where the plaintiff was not instrumental in achieving the remedy sought, (3) where plaintiffs challenged an antiquated, rarely enforced statute, and (4) where the plaintiff through a settlement or consent order agreed to compromise his right to pursue subsequent fees.

*Id.* Paradoxically, this quotation's silence is that which speaks loudest.

 Section 1988 jurisprudence has not identified a prevailing party's financial wherewithal, i.e., ability to pay, as a "special circumstances" warranting the absolute denial of a fee award. In identifying the particular "special circumstances" in which a fee award would be improper, courts have most certainly been aware of the financial resources of the prevailing party. Yet, a civil rights plaintiff's financial wherewithal is not a "special circumstance". Indeed, this circuit subscribes to the view that a district court errs by making the prevailing party's financial privation a precondition of a § 1988 award. *Duncan v. Poythress,* 777 F.2d 1508, 1511 (11th Cir.1985), *overruled on other grounds, Kay v. Ehrler,* 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991); *Riddell v. National Democratic Party,* 624 F.2d 539, 543 (5th Cir.1980); *Gower v. Farmers Home Admin. (In re Davis),* 91 B.R. 627, 632 (Bankr.M.D.Ga.1988). Moreover, denial of a fee award for circumstances other than those

identified as "special"—prejudice to the prevailing parties caused by their own attorney, for example—constitutes an abuse of discretion *Cf. Love v. Deal,* 5 F.3d at 1410. In light of this precedent, which has been tailored to and developed with an eye towards the traditional civil rights plaintiff, the court has no choice but to find that there must be an award of attorney fees under § 1988.

However, the court feels compelled to express its agreement with Justice Kennedy's dissent that such fee awards do not "vindicate the purposes of § 1983 or § 1988, but merely shift[ ] the balance of power away from the States and towards interstate businesses." Section 1988's overriding purpose has been identified as "the interest in obtaining independent counsel for victims of civil rights violations." *Kay v. Ehrler,* 499 U.S. 432, 437, 111 S.Ct. 1435, 1437, 113 L.Ed.2d 486 (1991).

> "In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, . . . then citizens must have the opportunity to recover what it costs them to vindicate these rights in court."

*Id.* at 436 n. 8, 111 S.Ct. at 1437 n. 8 (quoting S.Rep. No. 94–1011, p. 2 (1976), U.S. Code Cong. & Admin. News 1976 at pp. 5908, 5910). Furthermore,

> "[b]ecause a vast majority of the victims of civil rights violations cannot afford legal counsel, they are unable to present their cases to the courts. In authorizing an award of reasonable attorney's fees, [§ 1988] is designed to give such persons effective access to the judicial process where their grievances can be resolved according to law."

*Id.* (quoting HR Rep. No. 94–1558, p. 1 (1976)). These considerations, in conjunction with the "statutory policy of furthering the

---

a court's discretion as to the *amount* of fees to award. *See, e.g., McKenzie v. Cooper,* 990 F.2d 1183, 1186 (11th Cir.1993); *Richardson v. Alabama State Bd. of Educ.,* 935 F.2d 1240, 1248 (11th Cir.1991); *Martin v. University of South Alabama,* 911 F.2d 604, 611 (11th Cir.1990); *Curry v. Contract Fabricators, Inc., Profit Sharing*

*Plan,* 891 F.2d 842, 850 (11th Cir.1990) (ERISA); and *Lattimore v. Oman Const.,* 868 F.2d 437, 439–40 (11th Cir.1989). Research has not revealed a single case within this circuit where a court referred to "the need to attract competent counsel" when deciding whether fees should be awarded in the first instance.

successful prosecution of meritorious claims," influenced the Court's decision in *Kay* that pro se civil rights litigants who were themselves attorneys were not entitled to awards under § 1988. Although the Supreme Court has often expressed a willingness to refer to the purposes behind § 1988 when interpreting it, *see, e.g., Kay v. Ehrler*, this court does not have that luxury in the face of binding precedent.

Thus does this court find itself faced with the predicament foretold by Justice Kennedy's dissent in *Dennis*. Reference to policy underlying § 1988 supports the denial of an award. However, this court has little choice but to make an award notwithstanding that to do so in the case *sub judice*—where a civil rights plaintiff suing under the Commerce Clause has substantial financial resources—wholly contravenes the rationale underlying § 1988. The standards and procedures for dealing with motions brought under § 1988 have heretofore been the harvest of seeds planted in the House and Senate Reports—the conception of the civil rights plaintiff as being either impoverished or of meager means. To be sure, a few "traditional" civil rights plaintiffs have sufficient resources to hire a private attorney. But whatever may be the ratio of poor to prosperous plaintiffs in the context of "traditional" civil rights cases, that number is certainly inversely proportional to its companion figure for cases brought under the Commerce Clause. The harvest should certainly feed the indigent civil rights plaintiffs who are the intended beneficiaries. But should it also be used to fatten those who can afford their own banquet?

Unfortunately, the precedent that binds this court is ill-suited to the context of the Commerce Clause violations. Developed with one set of plaintiffs in mind, § 1988 jurisprudence is simply incompatible with the recently defined set of Commerce Clause civil rights plaintiffs. For example, the court may not properly refer to the nature of the predicate right violated[2] nor the financial wherewithal of the plaintiff in deciding the propriety of an award. Precedent regrettably mandates a fee award, notwithstanding that it undoubtedly contradicts every principle upon which § 1988 was enacted.

■ Although almost no discretion to deny a fee award exists in this circuit, the court does enjoy great latitude of discretion in molding the contours of the award. *Love*, 5 F.3d at 1410. A court should begin sculpting the award by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir.1994). The "going rate" for "similar services by lawyers of comparable skills, experience, and reputation" in the locality is the most influential consideration in determining a reasonable hourly rate. *Martin v. University of South Alabama*, 911 F.2d 604, 610 (11th Cir.1990). And hours reasonably expended will not include those spent on duplicative or excessive tasks. *Martin*, 911 F.2d at 610.

Plaintiff seeks the following hourly rates: $175 per hour for lead counsel, $125 per hour for lead counsel's associate, and $125 per hour for local counsel. Plaintiff has voluntarily reduced its lead counsel's and associate's fees $20 and $25 per hour, respectively, to accommodate the lower rates normally charged by attorneys in the Valdosta area.

---

**2.** Justice Kennedy has suggested at least one way in which courts might draw a distinction between predicate rights that have as their source a constitutional clause. Constitutional clauses that "secure individual rights 'only indirectly and incidentally' " inherently differ from those clauses whose primary purpose is to guarantee rights. *Dennis*, 498 U.S. at 458, 111 S.Ct. at 876 (Kennedy, J., dissenting). For example, the principle function of the Commerce Clause is to allocate power amongst the State and the Federal governments. *Dennis*, 498 U.S. at 453, 111 S.Ct. at 873 (Kennedy, J., dissenting). The Commerce Clause secures rights only as an incident of its purpose.

Although the "source distinction" assumes no importance when assessing the legitimacy of a § 1983 cause of action, it could provide valuable influence to a court searching for direction when faced with a § 1988 motion. Whereas a court enjoys no discretion in recognizing a § 1983 violation, the text of § 1988 provides discretion that must somehow be informed. The ability to refer to the nature of the predicate right would serve that function. That the court lacks this ability in this case is lamentable.

Defendants dispute these rates, claiming that they are not reasonable in light of the hourly fee charged by local counsel ($125 per hour).

In the court's considered judgment, the excellent representation provided by plaintiff's lead counsel warrants an hourly rate for her of $175 per hour. Plaintiff's case was promptly presented and disposed of at the expert direction of lead counsel. And as local counsel's rate is not challenged, the court finds it appropriate to award him $125 per hour. For reasons soon to be explained, the court need not determine the appropriate hourly rate for lead counsel's associate.

The next step is to determine the number of hours reasonably expended by plaintiff's counsel on this litigation. Lead counsel claims to have "reasonably expended" 158.7 hours; lead counsel's associate 175.8 hours; and local counsel 42.1 hours. Defendants object, claiming that plaintiff's claim of 376.6 total hours on this litigation exceeds their combined expenditure for this and the *Southern States* litigation, which was 314.2 hours. The court should also reduce the hours claimed, defendants contend, because of duplicative efforts by plaintiff's counsel, such as spending 63.4 hours on drafting a complaint when a model for that complaint existed in the companion *Southern States* litigation. Defendants also point to time entries that are inconsistent with those of their counsel.

The court agrees with defendants that the number of hours claimed by plaintiff's counsel are excessive. Claiming 63.4 hours to prepare a complaint, when a companion case was pending, was not reasonable in this court's judgment. Defendants argue that their expenditure of 153.8 hours on this case provides a reasonable benchmark. The court agrees, and finds that the hours claimed by plaintiff's lead counsel, 158.7, is a reasonable amount. The number of hours expended by local counsel, 42.1, were reasonable as well. Any hours over and above that were simply unnecessary.

Calculating the lodestar, lead counsel is entitled to $27,772.50, and local counsel $5,262.50, for a total attorney fee award of $33,035.00. Added to this are expenses rea-

sonably incurred. The court finds that the $4,074.17 claimed by lead and local counsel is a reasonable amount. Thus plaintiff is **AWARDED FEES** in the amount of $37,-109.17.

**SO ORDERED.**