Hazel **WILLIAMS**, Andrew **Palmer**, Curtis **Coe**, and Bill **Brasher**, Plaintiffs,

v.

**BOARD OF COMMISSIONERS OF McINTOSH COUNTY**, Board of Elections of McIntosh County, and Board of Registrars of McIntosh County, Defendants.

Civil Action No. CV295–90.

United States District Court, S.D. Georgia, Brunswick Division.

Aug. 15, 1996.

---

Jerry Wilson, Lithonia, GA, Noel David Buffington, St. Simons Island, GA, for Hazel Williams.

Noel David Buffington, St. Simons Island, GA, for Andrew Palmer, Curtis Coe, Bill Brasher.

Douglas Wayne Alexander, Brunswick, GA, Adam S. Poppell, III, Darien, GA, for defendants.

Phillip L. Hartley, Harben & Hartley, Gainesville, GA, Lawrence J. Hogan, Chambers, Mabry, McClelland & Brooks, Lawrenceville, GA, for Board of Education of McIntosh County.

### ORDER

ALAIMO, District Judge.

On June 14, 1995, Plaintiffs, Hazel Williams, Andrew Palmer, Curtis Coe, and Bill Brasher ("Plaintiffs"), filed a complaint in this Court, challenging the existing election districts of McIntosh County, Georgia. On May 24, 1996, a consent decree was entered, adopting a new apportionment plan for the districts.

This case is presently before the Court on Plaintiffs' motion for attorneys' fees and costs under 42 U.S.C. § 1973*l* (e)[1] and on Defendants' Motion for Review of Plaintiffs' Bill of Costs. For the reasons addressed below, Plaintiffs' motion will be **GRANTED IN PART** and **DENIED IN PART**, and Defendants' Motion will be **DENIED**.

### FACTS

This action involves a challenge to the election districts of McIntosh County, which was entered in accordance with a consent decree entered in *McIntosh County Branch of the NAACP, et al. v. McIntosh County,* CV277–70 (March 31, 1978). On July 13, 1995, Plaintiffs filed a motion for partial summary judgment, contending that the existing districts were malapportioned as a matter of law. On December 13, 1995, the Court entered an Order denying Plaintiffs' motion on the ground that there remained a genuine issue of material fact concerning the accuracy of the database used by Plaintiffs in making their malapportionment calculations.

Newspaper articles detailing the Court's denial of summary judgment appeared shortly thereafter, with quotes from Plaintiffs' attorney, David Buffington. Because of these articles, Defendants filed a motion for Sanctions, contending that Plaintiffs' counsel violated Local Rule 11.2.[2] Plaintiffs' counsel filed a written response to Defendants' motion, and a hearing was conducted on February 16, 1996. After hearing the arguments of counsel for both sides, the Court denied Defendants' motion, stating that there was no evidence that Rule 11.2 had been violated.[3]

The parties settled on April 29, 1996, the day the case was scheduled for a bench trial. Consequently, on May 28, 1996, a Consent Decree was entered, adopting a new apportionment plan to be used in the 1996 elections, and thereafter.

---

**1.** In actuality, there was a motion for attorneys' fees and costs, as well as an amended motion. Because these two motions involve the same subject matter, they will be addressed *in solido.*

**2.** Local Rule 11.2 restricts the dissemination of information about pending cases "if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the administration of justice."

**3.** In this litigation, there were also motions to stay the proceedings, to intervene, and to add additional witnesses to the pre-trial order. These motions were denied.

## DISCUSSION

### I. The Availability of Attorneys' Fees

■ The Voting Rights Act of 1965, 42 U.S.C. § 1973*l* (e), authorizes courts to award reasonable attorneys' fees to prevailing parties in actions brought under the voting guarantees of the fourteenth or fifteenth amendment to the United States Constitution.[4] Section 1973*l* (e), which is strikingly similar to the Civil Rights Attorneys' Fees Act of 1976, 42 U.S.C. § 1988,[5] serves the familiar "goal of encouraging private litigants to act as private attorneys general to vindicate their rights and the rights of the public at large, by guaranteeing to them, if they prevail, reasonable attorneys' fees." *Donnell v. United States,* 682 F.2d 240, 245–46 (D.C.Cir. 1982), *cert. denied,* 459 U.S. 1204, 103 S.Ct. 1190, 75 L.Ed.2d 436 (1983). This is especially true, where, as here, the Defendants are governmental entities. *Martin v. Heckler,* 773 F.2d 1145, 1150 (11th Cir.1985).

■ With § 1973*l* (e), Congress sought to create an alternative means to assure, without the expenditure of additional public funds, that the policies underlying the Voting Rights Act are successfully implemented. *Medders v. Autauga County Bd. of Educ.,* 858 F.Supp. 1118, 1122 (M.D.Ala.1994). As such, a prevailing plaintiff ordinarily is entitled to a fee award as a matter of course, absent special circumstances that would render such an award unjust. *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 401, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968).[6]

4. Section 1973*l* (e) provides:
 "In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow a prevailing party, other than the United States, a reasonable attorney's fees as part of the costs."
 42 U.S.C. § 1973*l* (e).

5. Indeed, the similarity among the language and underlying purposes of the fee award provisions of the Voting Rights Act and the Attorneys' Fees Act has led the Eleventh Circuit to conclude that the standards for awarding fees under the two provisions should generally be the same. *Maloney v. City of Marietta,* 822 F.2d 1023, 1025 n. 2 (11th Cir.1987). *See also City of Burlington v. Dague,* 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) (case law articulating what is

■ In *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court held that, for fee purposes under § 1988, a plaintiff may be considered a "prevailing party" if the plaintiff succeeds on "any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.* at 433, 103 S.Ct. at 1939. (citation omitted). As the Supreme Court explained in *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), awards of attorneys' fees are not dependent upon the plaintiff succeeding on *all* claims or even on achieving success on the central issue of the litigation. *Id.* at 790–91, 109 S.Ct. at 1492–93. To the contrary, all the significant-relief standard requires is that the plaintiff receive at least some relief on the merits of his claim, either through an enforceable judgment against whom the fees are sought or comparable relief from a consent decree or settlement. *Id.* at 792, 109 S.Ct. at 1493; *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); *Doe v. Busbee,* 684 F.2d 1375, 1379 (11th Cir.1982). "In short, a plaintiff prevails when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar,* 506 U.S. at 111, 113 S.Ct. at 573.

■ Applying the above-stated principles, it is clear that Plaintiffs prevailed in this action. The Consent Decree entered by the parties adopted a new apportionment scheme for all subsequent elections, including the

a reasonable attorney's fee applies uniformly to all federal fee-shifting statutes). The Court will, therefore, use cases construing § 1988, in addition to cases interpreting § 1973*l* (e).

6. The Eleventh Circuit has defined these special circumstances as:
 (1) where the plaintiff's action asserted essentially a private tort claim for money damages, (2) where the plaintiff was not instrumental in achieving the remedy sought, (3) where plaintiffs challenged an antiquated, rarely enforced statute, and (4) where the plaintiff through a settlement or consent order agreed to compromise his right to pursue subsequent fees.
 *Love v. Deal,* 5 F.3d 1406, 1410 (11th Cir.1993) (citations omitted). Defendant has not asserted the existence of any of these special circumstances, and the Court finds none to be present.

primary elections held July 9, 1996. (Consent Order at ¶ 2, 4). Defendants assert, however, that Plaintiffs' aim was not to reapportion the voting districts, but the achievement of political objectives through the ousting of incumbent county commissioners. This assertion is not supported in the record. In any event, it is only natural that voting rights plaintiffs are unsatisfied with the existing officials, for voting rights litigation involves a claim that voting strength is not as powerful as it should be.

## II. *The Amount of Attorneys' Fees to be Awarded*

■ The next task before the Court is the determination of the amount of attorneys' fees to be awarded. This is accomplished by multiplying the number of hours reasonably expended by a reasonable billing rate. *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984); *Norman v. Housing Auth. of City of Montgomery,* 836 F.2d 1292, 1298–1302 (11th Cir.1988). The product of that calculation is called the "lodestar." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 563, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439 (1986).

■ In *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974),[7] the Former Fifth Circuit enumerated twelve factors that may be considered in calculating a lodestar amount. *Id.* at 717–18. *See Blanchard v. Bergeron,* 489 U.S. 87, 91–92, 109 S.Ct. 939, 943, 103 L.Ed.2d 67 (1989); *Hensley v. Eckerhart,* 461 U.S. 424, 434 n. 9, 103 S.Ct. 1933, 1940 n. 9, 76 L.Ed.2d 40 (1989). These factors are:

(1) the time and labor required,

(2) the novelty and difficulty of the legal questions,

(3) the skill required to perform the legal services properly,

(4) the preclusion of other employment by the attorney due to acceptance of the case,

(5) the customary fee for similar work in the community,

(6) whether the fee is fixed or contingent,

(7) time limitations imposed by the client or circumstances,

(8) the amount involved and results obtained,

(9) the experience, reputation, and ability of the attorney,

(10) the undesirability of the case,

(11) the nature and length of the professional relationship with the client, and

(12) awards in similar cases.

*Johnson,* 488 F.2d at 717–18.

### A. Hours Reasonably Expended

■ In determining the number of hours reasonably expended, the Court must consider whether the work sought to be compensated was "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." *Pennsylvania v. Delaware Valley,* 478 U.S. 546, 561, 106 S.Ct. 3088, 3096, 92 L.Ed.2d 439 (1986) (citations omitted). Courts must also exclude hours that were "excessive, redundant, or otherwise unnecessary." *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939–40 (1983).

Plaintiffs provided lists of the hours worked by David Buffington, lead counsel, Jerry Wilson, Buffington's co-counsel, paralegal, William C. Cooper, and Atlanta attorneys, Michael Hauptman and Gerald Weber, who provided assistance to Buffington at the Rule 11 show cause hearing. Plaintiffs enumerate that Cooper and the attorneys worked the following hours:

| | |
|---|---|
| Buffington: | 176.7 hours |
| Wilson: | 32 hours |
| Cooper: | 19 hours |
| Hauptman: | 6.3 hours |
| Weber: | 18.9 hours |

After reviewing the attached affidavits and time logs provided by Plaintiffs, the Court finds that the requested hours should be compensated with respect to Buffington, Wilson, and Cooper, but not with respect to Hauptman and Weber.

---

7. Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of*

*Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc* ).

■ Buffington enlisted Weber and Hauptman to assist him with Free Speech arguments at the show cause hearing. While the Court listened to Plaintiffs' First Amendment arguments, the sole basis for its ruling was that there was no violation of the Local Rule. Moreover, Plaintiffs' efforts in litigating this matter were competently and sufficiently covered by their lead counsel, Buffington. His time log enumerates considerable time spent in preparation for his responsive brief and for his presentation at the hearing. (Buffington Printout at 4–6, Pl[s]' Br. in Supp. of Am.Mot. for Atty. Fees and Costs, at Ex. 3–A). As such, any billing of Hauptman and Weber was unnecessary and a duplication of effort.

■ Concerning Buffington, Wilson, and Cooper, the Court finds the effort expended by them to be reasonable. Both Buffington and Wilson aver in the affidavits that billing judgment was exercised in the preparation of their time logs, in that all duplicative and inefficient work was excluded. Comparing Buffington and Wilson's time logs, moreover, there appears to be no duplication of effort. Buffington spent most of his time in the research and drafting of pleadings, while Wilson spent most of his time on demographics, preparing maps from Census data. Cooper was not involved in duplicative effort, since a majority of his time was spent downloading information from a computer, and other clerical functions. For these reasons, Plaintiffs will be awarded fees for the time submitted by Buffington, Wilson, and Cooper.

## B. Reasonable Hourly Rate

A reasonable rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Blum,* 465 U.S. at 895–96 n. 22, 104 S.Ct. at 1547 n. 11; *Norman,* 836 F.2d at 1299. It has been held that a voting rights attorney possesses skills comparable to an attorney practicing in complex areas, such as antitrust law or highly technical bankruptcy matters. *Medders,* 858 F.Supp. at 1127 (*citing* S.Rep. No. 1011, 94th Cong., 2d Sess. 6 (1976), 1976 U.S.C.C.A.N. 5913). Moreover,

for local attorneys, the relevant legal community is the district in which the Court sits, that being the Southern District of Georgia. *See Knight v. State of Ala.,* 824 F.Supp. 1022, 1027 n. 1 (N.D.Ala.1993) (*citing Turner v. Secretary of Air Force,* 944 F.2d 804, 808 (11th Cir.1991)).

■ The party seeking an award of attorneys' fees bears the burden of establishing that the requested rate is reasonable. *Blum,* 465 U.S. at 895–96 n. 11, 104 S.Ct. at 1547 n. 11; *Norman,* 836 F.2d at 1299. This burden may be met by a showing of an attorney's hourly billing rate on cases with similar complexity and skill. *Knight,* 824 F.Supp. at 1028 (*citing McDonald v. Armontrout,* 860 F.2d 1456, 1458–59 (8th Cir.1988); *Tomazzoli v. Sheedy,* 804 F.2d 93, 98–99 (7th Cir.1986)).

Plaintiffs submit that David Buffington should be compensated at $175/hour, that Jerry Wilson should be compensated at $160/hour, and that Cooper should be compensated at the rate of $50/hour. Each requested rate will be evaluated in turn.

### 1. *David Buffington*

■ Voting Rights litigation is, in and of itself, an extremely complex and intimidating area of the law. *See Medders,* 858 F.Supp. at 1125 ("even the simplest one-person-one-vote case would be formidable to an attorney unfamiliar with voting rights law"). As a result, attorneys practicing in this area must possess much skill and experience, two qualities which Buffington enjoys. (*See* Aff. of Neil Bradley, Assoc. Dir. of the Southern Reg. Office of the ACLU, Bradley Aff. at ¶ 3, Br. In Supp. of Pl[s]' Am.Mot. for Atty. Fees, at Ex. 4) (stating that Buffington has twenty-five years' experience in voting rights litigation and that Buffington is a highly effective voting rights advocate.)

An attorney with Buffington's experience should be compensated commensurate with the difficult nature of the case and the sacrifice expended. To that end, it has recently been held that $175/hour is a reasonable rate for attorneys practicing in highly complex matters. *See In re River Landings, Inc.,* 180 B.R. 701, 705 (S.D.Ga.1995). Thus, the Court concludes that Plaintiffs' requested

rate of $175/hour for Buffington is reasonable. (*See Johnson*, 488 F.2d at 717–18) (finding attorney's skill, the nature of the case, and the comparable rate of compensation in the legal community to be relevant in determining a reasonable rate).

### 2. Jerry Wilson

█ Plaintiffs next seek a rate of $160/hour for Buffington's co-counsel, Jerry Wilson. In his affidavit, Wilson avers that he is an experienced voting rights attorney, having "been counsel in at least fifteen voting rights cases filed in Georgia in the last six years." (Wilson Aff. at ¶ 3, Pl[s]' Br. In Supp. of Am.Mot. for Atty. Fees, at Ex. 5). Moreover, Wilson has testified in thirty federal voting rights cases on the subject of demographic and remedial plans, which was the area of his contribution in this case. (*Id.*).

As with Buffington, the *Johnson* factors considering the undesirability and complexity of the case are relevant, as is the skill of Wilson. Review of the hours worked by Wilson, however, reveal that a majority of his tasks were comparable to that of a low-level associate. For instance, on March 15, 1996, Wilson attended a deposition, but, to the Court's knowledge, he did not ask any questions. On March 24, 1996, he performed the errand of buying maps for Buffington. Most notably, there is no averment by Plaintiffs as to why Wilson's work is worth only $15/hour less than Buffington, who was lead counsel.

For these reasons, Plaintiffs have failed to meet their burden of proof and, thus, the Court must use its own experience and judgment in determining Wilson's rate. *Blum*, 465 U.S. at 895–96 n. 11, 104 S.Ct. at 1547 n. 11; *Norman*, 836 F.2d at 1299. The Court has recently awarded $100/hour for the work of a second-chair attorney in a civil rights action. (Order Granting Attorney Fees and Cost In *Hicks v. O'Rourke*, No. CV295–180 (S.D.Ga.1996)). That fee, however, will be

raised to $125/hour due to Wilson's skill and experience.

### 3. William C. Cooper

█ Plaintiffs also seek $50/hour for the services of William C. Cooper, a paralegal employed in this case. Under established Supreme Court precedent, the statutory language "reasonable attorney's fees" includes the compensation of paralegals at the prevailing market rate. *Missouri v. Jenkins*, 491 U.S. 274, 285, 109 S.Ct. 2463, 2470, 105 L.Ed.2d 229 (1989). Indeed, the availability of statutory compensation for paralegals, "encourages the effective delivery of legal services and [reduces] the spiraling cost of civil rights litigation." *Cameo Convalescent Ctr., Inc. v. Senn*, 738 F.2d 836, 846 (7th Cir.1984), *cert. denied*, 469 U.S. 1106, 105 S.Ct. 780, 83 L.Ed.2d 775 (1985).

█ In support of their submission of a rate of $50/hour for Cooper, Plaintiffs provide the affidavits of James B. Gilbert, Jr., a partner with the local firm of Gilbert, Harrell, Sumerford, and Martin, and B. Kaye Katz, a partner with the law firm of Whelchel, Brown, Readdick, and Baumgartner. Both Gilbert and Katz assert that their firms bill separately [8] for time spent by paralegals at a rate of $45–60 an hour. Gilbert and Katz's firms perform much of the litigation in the local legal community and, thus, are familiar with local billing practices. Defendants have provided no opposing affidavits. Consequently, the Court is of the opinion that the requested rate of $50/hour is reasonable.

### C. Lodestar

Based on the above analyzes, the Court finds the lodestar to be as follows:

| | | | |
|---|---|---|---|
| Buffington: | $175/hour at 176.7 hours | = | $30,992.50 |
| Wilson: | $125/hour at 32 hours | = | 4,000.00 |
| Cooper: | $50/hour at 19 hours | = | 950.00 |
| | Total Lodestar [9] | = | $35,942.50 |

---

**8.** Under *Missouri v. Jenkins,* where the prevailing practice in the legal community is to bill paralegal work separately at market rates, as opposed to including such services in the attorney's hourly rate, statutory attorney fees may be awarded separately. *Id.* at 287–88, 109 S.Ct. at 2471–72.

**9.** At this point it is usually necessary to determine whether the lodestar should be enhanced or diminished. *Desisto College v. Town of Howey-in-the-Hills,* 718 F.Supp. 906, 923 (M.D.Fla. 1989). Neither party has asked for such an adjustment, and the Court has found that no adjustment is necessary. *See Delaware Valley Citizens' Council,* 478 U.S. at 565–66, 106 S.Ct.

### D. Expenses

█ The expenses incurred in voting rights litigation are intertwined with an award of reasonable attorneys' fees. *Missouri v. Jenkins*, 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989). The Eleventh Circuit has spoken that, in order to further the purpose of civil rights litigation, "Reasonable attorneys' fees ... must include reasonable expenses ... as equally vital components of the cost of litigation." *Dowdell v. City of Apopka*, 698 F.2d 1181, 1190 (11th Cir.1983). As such, all reasonable expenses incurred during litigation, with the exception of routine office overhead, are recoverable as litigation expenses. *Id.* at 1192. Because it has already been established that Plaintiffs are entitled to attorneys' fees under § 1973*l* (e), it is clear that Plaintiffs are also entitled to reimbursements for their expenses, provided that such expenses are reasonable.[10]

█ In relation to the work performed by Buffington, Wilson and Cooper, Plaintiffs request $1,424.71 in expenses. This amount reflects, in large part, telephone, fax, postal, and copying charges, all costs previously found reasonable by the Eleventh Circuit. *Dowdell*, 698 F.2d at 1192. Moreover, the Court finds the other charges to be reasonable and without duplication. As such, $1,424.71 in costs will be added to the previously calculated lodestar of $35,942.50, making the total compensable amount $37,367.21.

### III. *Defendants' Motion for Review of the Bill of Costs*

Plaintiffs have also filed a motion for bill of costs, seeking a $701.75 reimbursement for filing fees, court transcripts, and deposition transcripts. Federal Rule of Civil Procedure 54(d) provides "costs shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed.R.Civ.P. 54(d).

In the case *sub judice*, Plaintiffs clearly are the prevailing parties, having obtained a consent decree mandating reapportionment.

Rule 54(d), however, does not give the district judge "unrestrained discretion" to reimburse a prevailing party "for every expense he has seen fit to incur in the conduct of his case." *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 235, 85 S.Ct. 411, 415, 13 L.Ed.2d 248 (1964). Indeed, the United States Supreme Court has held that district courts may only reimburse litigants for items set forth in 28 U.S.C. § 1920 and other related statutes. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987); *West Virginia Univ. Hosp.'s, Inc. v. Casey*, 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991). *See also Fulton Federal Savings & Loan Assoc. of Atlanta v. American Insur. Co.*, 143 F.R.D. 292, 295 (N.D.Ga.1991).

Title 28 U.S.C. § 1920 provides:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under § 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under § 1828 of this title.

28 U.S.C. § 1920 (West 1994).

Plaintiffs seek to recover $120.00 for court filing fees, $9.00 for a transcript of the settle-

---

at 3098–99. (There is a strong presumption that the lodestar amount represents the reasonable fee award and, thus, the lodestar should only be adjusted in rare and exceptional circumstances.).

**10.** The reasonableness standard under § 1988 is more liberal than the standard employed under Rule 54(d) of the Federal Rules of Civil Procedure and under the commonly used statute 28

U.S.C. § 1920. Indeed, under 28 U.S.C. § 1920, a party may only recover for expenses explicitly provided by statute. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987); *West Virginia Univ. Hosp.'s, Inc. v. Casey*, 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991). *See also Fulton Federal Savings & Loan Assoc. of Atlanta v. American Insur. Co.*, 143 F.R.D. 292, 295 (N.D.Ga. 1991).

ment terms, as read by the Court, and $572.75 for the videotaped depositions of Linda Meggers and David Walbert. The filing fees and Court transcript are recoverable under the clear terms of §§ 1920(1) and (3), and Defendants have filed no objections to the awarding of such costs.

 Defendants do object, however, to the videotaped deposition of Linda Meggers, asserting that, because this was a bench trial, a written transcript would have been sufficient. The Court disagrees. In general, a video is certainly more interesting than the dry page, and Plaintiffs surely cannot be expected to forego effective presentation in the interest of economy. Moreover, at a bench trial, the Court's role is to determine the credibility of witnesses. This can easily be done when watching a videotaped deposition, but is nearly impossible when reading a written transcript.

## CONCLUSION

As illustrated by the above analysis, Plaintiffs were the prevailing parties in this action, thereby warranting the award of reasonable attorneys' fees. Some of the requested fees were not reasonable, however, and, as such, Plaintiffs' motion for attorneys' fees is **GRANTED IN PART** and **DENIED IN PART.** In that vein, the Clerk is directed to enter judgment awarding Plaintiffs $37,-367.21 in attorneys' fees and expenses. Moreover, Plaintiffs' itemized costs are compensable under 20 U.S.C. § 1920. Thus, Defendants' motion for review of Plaintiffs' costs is **DENIED.** The Clerk is directed to award to Plaintiffs $701.75 in costs.